IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 15-cv-00109-RPM

MICHAEL VALDEZ,

    Plaintiff,

v.

JOHN MACDONALD, Denver Police Officer, in his individual capacity;
ROBERT MOTYKA, JR., Denver Police Officer, in his individual capacity;
CITY AND COUNTY OF DENVER,

    Defendants.
_____

ORDERS ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

During the morning of January 16, 2013, the Denver Police Department (DPD) received calls reporting a domestic violence incident in Thornton and two separate shooting incidents in Aurora and Montbello, all involving a red Dodge pickup truck. Later in the day, Michael Valdez got into the bed of that truck having accepted the offer of the driver, Johnny Montoya, to give him a ride to go to the house of Valdez' brother. Chuck Montoya was in the bed with a load of "junk." Jude Montoya sat in the passenger seat and Alyssa Moralez sat in the middle. Valdez knew the Montoya brothers. He did not know Moralez and he had no knowledge of any of the incidents involving the truck that morning. Valdez did not have a gun.

During the afternoon a DPD officer spotted the red truck in northwest Denver and broadcast his observation on the radio. Many officers responded. Officer Derrick encountered the truck, was shot at and narrowly avoided a collision with it. Officer Olive located the truck and began a pursuit. Sgt. Motyka heard the radio calls as he was

entering the District One station.  He joined in the chase, driving a "slick top" police car.  It did not have the roof top lights but did have a siren and wig-wag lights on the dashboard.  The truck made many turns and maneuvers on the streets to avoid the police.  At one point Motyka was immediately behind the truck and was being fired at.  He saw the shots being fired by a man in the bed of the truck and a man leaning out of the passenger window.  Several shots went through his windshield.  One of them struck his left shoulder causing him to pull over to assess the wound.  At that time, Olive moved in front of Motyka and became the lead car in the pursuit.  Motyka rejoined the chase following in behind Olive.  The truck was emitting smoke from a flattened right front tire.

      The driver lost control and the truck crashed into a tree at the edge of Columbus Park at 39th Avenue and Osage Street.  Olive was first to arrive at the scene.  He got out of his patrol car and stood behind the front door to assess the situation.  No shots were being fired by anyone at that time.  Motyka arrived within moments and took up a position behind and to the right of Olive's car using it as cover.  Jude Montoya, wearing a white "hoodie" was seen running away, having come out of the passenger door of the truck.  Other people were coming out that door rapidly.  The driver's door was jammed in the crash.

      There are many factual disputes about the sequence of events and the conduct of the officers and occupants of the truck.  There are also inconsistent statements and testimony from those present in depositions, interviews and in the trial of Chuck Montoya.

Without judging the credibility of these witnesses, the following narrative is a version of events that a reasonable jury could find drawing all inferences in favor of Valdez.

Motyka started shooting immediately on arrival at his position. He fired a burst of six or seven rounds. After a brief pause he fired another burst. Lt. Macdonald arrived in moments and started firing in the same direction as Motyka. He shot six times. In his interview with DPD Motyka said that "probable cause is in my shoulder" suggesting he was acting out of revenge and anger at having been shot.

Chuck Montoya stayed in the truck bed. During the police pursuit and hearing gunshots, Valdez had crawled up into the cab through the rear window and crouched down above Moralez who was curled up on the floor.

Valdez and Moralez testified that they went out the passenger door immediately after Jude and went down to the ground in a prone position between the truck and a tree, facing into the park.

During the bursts of gunfire by Motyka and Macdonald Valdez was hit in a finger and in his back. The bullet that hit him in the back, causing serious injury, came from Motyka's gun. It was not possible to determine whether the bullet that hit his finger came from the shooting by Motyka or Macdonald. During the DPD investigation multiple bullets were found in the lower part of the tree and one on the grass near where Valdez had lain.

It is apparent that the area was sprayed with bullets permitting the inference that the officers were firing without aiming at a clear target.

Motyka was in extreme pain from the wound in his shoulder.  In an interview with a DPD investigator on January 18, 2013, he said that the pain was causing him to nearly faint, saying that he saw a black cloud closing his peripheral vision and after shooting he backed off to avoid becoming a liability to the other officers.  Macdonald helped him to a car.  Motyka was very angry as well and very eager to get the occupant who shot him.  In the same interview he said that he kept thinking about aiming with the front sight as he had been trained.  These statements and the scattered bullets warrant an inference that Motyka started shooting without making any effort to determine whether there was any immediate threat to him or others as the occupants of the cab came out.  Johnny Montoya was the last occupant to come out the passenger door.  He was shot dead by other officers after failing to obey their commands several minutes after Motyka withdrew from the immediate scene.

The shootings by Motyka and Macdonald are actions in sharp contrast to the conduct of Olive who was there first and who did not assess an immediate threat requiring shooting for the safety of the officers or anyone else.

Both Motyka and Macdonald have said that they were firing at a man who had a gun and went to his knee to get into a firing position.  Olive did not support that view.  Presumably Johnny had a gun when he was shot.

Three guns were found.  DNA testing excluded Valdez as a source of what was found on them.  Johnny Montoya had come out the passenger door and was standing when Valdez and Moralez were on the ground.  He must not have been seen as an immediate threat by Olive or other officers until he was shot three minutes after Motyka

and Macdonald were done shooting. They were about three car lengths away from the occupants when firing.

The defendants argue that there was no seizure of Valdez under the Fourth Amendment by Motyka and Macdonald prior to the shooting. That is irrelevant. There can be no doubt that all of the occupants of the truck were seized by DPD officers when the truck crashed. They were surrounded by police cars and officers. Valdez was shot and thereby immobilized. It may be true that they did not intentionally shoot at Valdez while he was on the ground in a surrendering position but that is not required for liability because the record indicates that there was a hail of gunfire by them which can support a finding of reckless and unreasonable conduct. A jury could find that Motyka's conduct after he had been shot was in itself unreasonable because he was by that time impaired both physically and emotionally. His subjective motivation is not relevant. The well established standard for officer conduct in using deadly force is what should be expected from an objectively reasonable police officer in the same position in perceiving whether there was probable cause to believe that there was a threat of serious harm to himself or to others. *Tennessee v. Garner,* 471 U.S. 1, 11 (1985). There had been a lot of shooting at the police during the pursuit. Civilians were in danger in the residential neighborhood where the truck and police cars were speeding.

The crash scene was chaotic and changing fast. Motyka thought that there were four occupants of the truck, including a man shooting from the truck bed and another man leaning out of the passenger side window. But no one was actively shooting at the police when he and Macdonald arrived. Motyka had protective cover from Olive's vehicle. One occupant had already run away. A jury could reasonably find that like

5

Olive a reasonable officer in Motyka's position would have waited for the situation to develop further before shooting at an identifiable threat which Johnny Montoya presented a few minutes later. Motyka saw Valdez and Moralez go to the ground but could not tell if that was because they had been shot.

It is recognized that the use of deadly force must be judged from the perceptive of a reasonable officer on the scene forced to make split second judgments about the amount of force necessary in a particular situation. But reasonableness depends upon whether the officers were in danger at the precise moment that they used force. *Estate of Ceballos v. Husk,* 919 F.3d 1204, ____ (10th Cir. 2019) (quoting *Allen v. Muskogee,* 119 F.3d 837, 840 (10th Cir. 1997)).

Here there was a lull in the action which the defendant officers should have recognized as Olive did.

There was probable cause to arrest all of the occupants of the truck when it crashed. The question presented is what level of force was required to make that arrest. The use of deadly force depended upon whether there was an imminent threat to the safety of the police officers.

Sgt. Motyka began firing immediately on his arrival. He said that he shot at Valdez believing that he was the occupant who had wounded him. There is a question of fact as to the position of Valdez when Motyka began firing and when Motyka's bullet struck Valdez in the back. It is a reasonable inference that the bullet came from the second round of shots at which time Valdez was on the ground, given the location of the bullets found near the place where he was lying. Even if Valdez had been standing there was no basis to believe that he was a threat in that he was not armed. In fact,

none of the occupants were seen as an immediate threat to Olive when he arrived before Motyka.  Whatever Motyka thought subjectively, his wild firing was unjustified because there was no imminent threat that prevented the use of lesser force to contain the occupants and arrest them.  It is to be recalled that the threat posed by Johnny Montoya resulting in his killing was three minutes after Motyka withdrew and after repeated commands to him to surrender.

Given Motyka's violation of the Fourth Amendment, the issue controlling the application of qualified immunity depends on a finding that this was contrary to clearly established law as set in a prior opinion of the Supreme Court or the Tenth Circuit Court of Appeals.  The recent opinion of the appeals court in *Estate of Ceballos, supra,* is relevant because in the opinion affirming denial of qualified immunity for Officer Husk the court found a sufficient precedent in *Allen v. Muskogee,* 119 F.3d 837, 839-41 (10th Cir. 1997).  That case is also applicable here. The defendants seek to distinguish it because there was no exchange of gunfire involved in that case.

That argument misses the fact that at the time of Motyka's arrival there were no shots being fired at any officers.  There was a lull in the action after the truck crashed. The law requires an imminent threat and there was none unless the testimony of the defendants is believed that they saw Valdez with a gun.  That testimony has been sufficiently challenged in this record to discount it at this summary judgment stage, leaving it for the jury at trial.

The claims against defendant Lt. Macdonald are different.  It would be too speculative to find that the bullet that struck the plaintiff's finger came from Macdonald's gun.  He cannot be held liable for that wound.

7

The plaintiff contends that as the ranking officer Macdonald had a duty to intervene and prevent Motyka's shooting.  The evidence from Macdonald's own testimony is that he started firing because Motyka was shooting.  The claim then is that he should have ordered Motyka to stop firing.  That would have been difficult in this chaotic noisy environment.  What he did wrong was his immediate acceptance of Motyka's perception of an imminent threat to officer safety.  There is no clearly established law that his conduct violated the Fourth Amendment.  Lt. Macdonald has qualified immunity.

The plaintiff asserts municipal liability of the City and County of Denver for failure to train the defendant officers and the ratification of their conduct after the fact.

There is no evidence concerning the DPD training policy with respect to police responding to a community threat by pursuing a vehicle whose occupants are firing at the police which ends with a crash and the occupants coming out of the passenger door with no shooting.  The plaintiff's counsel sought to obtain a Rule 30(b)(6) deposition to discover DPD training.  This Court denied that motion at a conference during which the Court commented that if the defendants are liable then Denver is liable.  That was an unfortunate comment which the plaintiff's counsel understood to be a ruling on municipal liability

It was not a ruling.

The material produced with the summary judgment motion is sufficient to submit to a jury the issue of ratification of the shootings by the City.  Exhibit 28 is a public statement of the then Manager of Safety with the following conclusion:

> After a careful review and analysis of this case, the Manager of Safety concludes that Sergeant Motyka, Corporal Roller and Technician Motz acted in accordance with the law, the Department's policies and their training.
>
> In closing, the Manager would like to assure the public and the members of this Department that it has reviewed and analyzed this case carefully. The conclusions that were reached by this office are consistent with those of the District Attorney's Office, the Chief of Police and the OIM. These consistent conclusions are supported by the facts. The Department always has concern when officers use deadly force. However, in many instances, such as in this case, the actions of the person against whom force was used have precipitated that use of force by their egregious behavior. Throughout this encounter, the involved officers took action and utilized tactics which they reasonably believed were necessary to protect their own lives, as well as the lives of others. These officers acted appropriately and reasonably to stop the imminent threat posed by Michael Valdez and John Montoya.

In reaching this conclusion the City conflated the conduct of John Montoya and Michael Valdez as threats requiring lethal force. Motyka's shooting of Valdez is equated with the shooting of John Montoya by Corporal Roller and Technician Motz.

That is contrary to what a jury may find from the proposed evidence that has been submitted with the defendants' motion for summary judgment. In this Court's Order Denying Motion to Dismiss [Doc. 26] it accepted as plausible the allegations that suggested that the detectives signing probable cause affidavits for the arrest warrant and criminal charge were in a conspiracy to cover up unlawful conduct. It will be for the jury to decide whether there was any imminent threat to officer safety by the actions of Valdez and whether the investigation and vindication of Motyka's shooting were valid.

It does not excuse this public ratification to say that the officers involved misled the supervisors. Either because of inadequate investigation or distorting information provided, it is the fact that the City expressly informed the public that the shooting of

9

Valdez was justified and that Motyka complied with established policy and training.  No case has been cited to support the legal conclusion that this is ratification of unconstitutional conduct but the City does not have the defense of qualified immunity and this case may be the first of its kind.

Upon the foregoing, it is

ORDERED that the motion for summary judgment is GRANTED as to John Macdonald, dismissing him from this civil action based on qualified immunity; and DENIED as to Robert Motyka, Jr., and the City and County of Denver.

DATED:   April 17, 2019

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge