IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-0109-WJM-STV

MICHAEL VALDEZ,

    Plaintiff,

v.

ROBERT MOTYKA, Jr., Denver Police Officer, in his individual capacity;
CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

## ORDER REGARDING MUNICIPAL LIABILITY DISCOVERY AND DISPOSITIVE MOTIONS

Defendant Robert Motyka, Jr. ("Motyka"), a Denver police officer, shot Plaintiff Michael Valdez ("Valdez") at least once, and perhaps twice, at the end of a dramatic car chase on the morning of January 16, 2013. Valdez claims that Motyka opened fire after all danger had passed, in violation of the Fourth Amendment. Familiarity with the parties' respective versions of events, recounted elsewhere (*e.g.*, ECF No. 152), is presumed.

This action was filed in January 2015 and was presided over by Senior U.S. District Judge Richard P. Matsch until his death in May 2019.[1] It was reassigned to the undersigned in July 2019.

On November 26, 2019, the Court held a status conference regarding the number of days reasonably required to try this case ("Status Conference"). (*See* ECF

---

[1] The progress of the case was delayed, in part, due to an interlocutory qualified immunity appeal.

No. 157.) There was significant discussion at the Status Conference, and in briefing leading up to it, regarding Valdez's theories for holding Denver liable under the framework established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), often known as "municipal liability." (*See* ECF Nos. 154–56.) The Court explained at the Status Conference that it was strongly considering revisiting some of Judge Matsch's rulings regarding municipal liability, and that a written order would issue in that regard.

This is that order. For the reasons explained below, the Court finds that Valdez should have been allowed to complete his municipal liability discovery through a Rule 30(b)(6) deposition of Denver. Accordingly, the Court will allow such a deposition to go forward, subject to certain constraints, and then Denver will receive a second opportunity to move for summary judgment against Valdez's municipal liability theories, if appropriate.

## I. BACKGROUND

### A. The Motion to Compel

In March 2018, Valdez moved to compel a Rule 30(b)(6) deposition of Denver on topics related to his municipal liability theories, including Denver's training, policies, and procedures. (ECF No. 63 at 4–5, 14–17; ECF No. 63-3.) Judge Matsch held a hearing in May 2018 to resolve this and other pending motions. (*See* ECF No. 79.) On the topic of the Rule 30(b)(6) deposition, Judge Matsch had the following exchange with counsel for Denver:

> Q. But there was an investigation [of the shooting] as there would be in any shooting?
>
> A. That's right, there were two. One by the Denver DA's office in conjunction with our homicide unit, and then after

> that it went to our use-of-force board for determination of whether or not it was within or without policy. It was found to be within policy with respect to involved officers.
>
> Q. All right. So if it's within policy and there is a constitutional violation, the City is going to be liable, and I don't think we have to go beyond that.

(ECF No. 89 at 14–15.) Judge Matsch then switched to another topic, but soon followed up on the foregoing exchange, again addressing counsel for Denver:

> Q. . . . you know, I'm saying the 30(b)(6)—I'm not sure what—what we need—what is needed, particularly, what I just heard that the policy, the training is what it is and that he—all of the officers acted pursuant to legitimate— established policy. That's your statement, correct?
>
> A. Yes, Your Honor. They were found all acti[ng] within (inaudible) policy.
>
> Q. Yeah. So it's going to be—the City is going to liable if they're liable.

(*Id.* at 15–16.) Counsel for Valdez then began trying to persuade Judge Matsch to at least allow a deposition about a particular training method, but Judge Matsch refused:

> Well, what difference does it make if there could be other kinds of training? The City is taking responsibility for what has been done here, so it seems to be end of problem. Alternative training, what difference does it make? So I don't see any need for this 30(b)(6) stuff.
>
> Let's get to trial. . . .

(*Id.* at 17.)

For reasons that will be discussed below, in the Court's view Judge Matsch's statement that Denver would be liable if an individual defendant is liable is incorrect, at least without certain important qualifications. At the hearing, however, Denver's counsel never sought to correct or qualify Judge Matsch's repeated and unqualified statements

3

to this effect.

**B.    Summary Judgment Proceedings**

Denver moved for summary judgment in May 2018, arguing (among other things) that it deserved summary judgment on municipal liability because Valdez lacked necessary evidence. (ECF No. 82 at 32–42.) Valdez responded that Denver's municipal liability arguments should be denied on the basis of judicial admission or judicial estoppel arising from the motion-to-compel hearing, because Denver allowed Judge Matsch to deny the Rule 30(b)(6) deposition under the assumption that Denver's liability would automatically flow from the individual officers' liability, if any. (ECF No. 92 at 69–75.) Valdez further responded, on the merits, that it has evidence of "ratification" (apparently referring to the after-the-fact finding that the officers acted according to policy) and failure to train (because "Denver clearly failed to adequately train Defendants not to shoot an unarmed, surrendering man, under [the] circumstances of this case"). (*Id.* at 75–80.)

In reply, Denver argued that Judge Matsch's reasoning at the motion-to-compel hearing was flawed:

> Here, Denver's Use of Force Board reviewed the incident and, based upon the information that was gathered during the homicide investigation, found the officers' conduct to be within policy. Thus, to the extent that a jury were to find the officers' conduct as considered by the Use of Force Board to be unconstitutional, municipal liability could be imposed. Importantly, however, Denver did not approve of the officers' conduct as Plaintiff alleges, i.e., that Sgt. Motyka intentionally shot him when he was lying on the ground not posing any threat to anyone. Thus, to the extent that Plaintiff could prevail on his version of events . . . a finding of municipal liability based upon ratification would not be warranted, as the record is devoid of any evidence to demonstrate that any final decisionmaker ratified the unconstitutional actions Plaintiff claims the officers engaged

4

in along with the basis for such actions.

(ECF No. 104 at 48–49 (citation omitted).) This argument is correct, for reasons the Court will explain below. But correct or not, what of the fact that Denver allowed Judge Matsch to persist in incorrect reasoning to reach a result in Denver's favor, *i.e.*, denying the Rule 30(b)(6) deposition? On that, Denver feebly argued that Judge Matsch's reasoning had no binding effect because he was only making a decision about relevance and proportionality of discovery. (*Id.* at 50–53.)

Judge Matsch resolved Denver's summary judgment motion in April 2019. (ECF No. 124.) On municipal liability, he began by saying:

> There is no evidence concerning the DPD training policy with respect to police responding to a community threat by pursuing a vehicle whose occupants are firing at the police which ends with a crash and the occupants coming out of the passenger door with no shooting. The plaintiff's counsel sought to obtain a Rule 30(b)(6) deposition to discover DPD training. This Court denied that motion at a conference during which the Court commented that if the defendants are liable then Denver is liable. That was an unfortunate comment which the plaintiff's counsel understood to be a ruling on municipal liability
>
> It was not a ruling.

(*Id.* at 8.)

From this, it appears that Judge Matsch refused Valdez's invitation to apply the doctrines of judicial admission or estoppel. And he seems to have disavowed the notion that Denver would be automatically liable if any individual defendant is liable. However, Judge Matsch gave no indication of disavowing the *effect* of that reasoning, which was to deny Valdez a Rule 30(b)(6) deposition. Judge Matsch instead immediately moved on to Valdez's "ratification" theory:

> The material produced with the summary judgment motion is

5

> sufficient to submit to a jury the issue of ratification of the shootings by the City. Exhibit 28 is a public statement of the then Manager of Safety [announcing that the officers acted in accordance with the law, the Department's policies and their training].

(*Id.* at 8–9.) As for Denver's argument that this theory necessarily turns on what the investigators assumed to be the true facts of the case, Judge Matsch disagreed:

> It does not excuse this public ratification to say that the officers involved misled the supervisors. Either because of inadequate investigation or distorting information provided, it is the fact that the City expressly informed the public that the shooting of Valdez was justified and that Motyka complied with established policy and training. No case has been cited to support the legal conclusion that this is ratification of unconstitutional conduct but the City does not have the defense of qualified immunity and this case may be the first of its kind.

(*Id.* at 9–10.) Judge Matsch thus denied summary judgment to Denver. He also denied summary judgment to Motyka in his individual capacity. (*See id.* at 6–7.) He granted summary judgment, however, to the only other remaining individual defendant, police officer John Macdonald, reasoning that the allegations against him were speculative and that he was protected by qualified immunity. (*Id.* at 7–8.)[2]

---

[2] In briefing, Valdez says that, although Macdonald is no longer an individual defendant, Denver may still be held municipally liable for Macdonald's actions if a Denver policy caused Macdonald to injure Valdez. (ECF No. 155 at 3.) Denver disagrees. (ECF No. 156 at 14–16.) Denver has the better argument, but not because of any legal principle about the relationship between individual liability, qualified immunity, and municipal liability. Rather, the Court finds that Macdonald's actions may not be the basis for Denver's liability solely because Judge Matsch ruled at summary judgment that, on the evidence Valdez was prepared to present, "[i]t would be too speculative to find that the bullet that struck the plaintiff's finger came from Macdonald's gun" and there was no realistic opportunity to stop Motyka from firing. (ECF No. 124 at 7–8.) The Court sees no reason to revisit these rulings. Furthermore, Valdez's apparent failure-to-intervene theory (*see* ECF No. 155 at 3) is a species of individual § 1983 liability, not municipal liability. *See, e.g., Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767–68 (10th Cir. 2013).

**C. Proceedings Since**

Unfortunately, Judge Matsch passed away in May 2019. By that time Motyka had appealed the denial of his qualified immunity defense. (ECF No. 125.) In July 2019, Valdez moved for an order from this Court certifying Motyka's appeal as "frivolous," in the sense that it was an improper use of the immediate right to appeal denials of qualified immunity. (ECF No. 137.) At that point, the action was reassigned to the undersigned. (ECF No. 141.)

In September 2019, the Court granted Valdez's motion and certified Motyka's appeal as "frivolous," thus permitting the Court to regain jurisdiction and go forward with trial preparations. (*See* ECF No. 147.)

## II. LEGAL STANDARD

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). This applies to the orders of previously-assigned judges "as long as prejudice does not ensue to the party seeking the benefit of the doctrine." *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993). And "[t]he relevant prejudice is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).

## III. ANALYSIS

To begin, the Court will not apply the doctrines of judicial admission or judicial estoppel to prevent Denver from denying municipal liability. Judge Matsch refused to

apply those doctrines at the summary judgment phase, and the Court sees no reason to revisit that decision. In any event, such doctrines are ultimately discretionary,[3] and Valdez will suffer no prejudice if he receives the Rule 30(b)(6) deposition that Judge Matsch denied on account of the erroneous reasoning that Denver tacitly endorsed.

Thus, to ensure that this case proceeds to trial on solid legal footing, and to cure potential prejudice to Valdez, the Court must revise and/or reverse certain of Judge Matsch's rulings described above regarding municipal liability. The Court finds that a Rule 30(b)(6) deposition should have been allowed, although not to the extent Valdez requested.

The Court will first discuss the two municipal liability theories in play here—"ratification" (depending on what one means by that) and failure to train. The Court will then return to the parties' Rule 30(b)(6) dispute and rule on Denver's objections.

## A. "Ratification"

The first principle of municipal liability under 42 U.S.C. § 1983 is that "governmental bodies can act only through natural persons," so "these governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("*Praprotnik*").[4] Thus, the plaintiff must always be able to identify a governmental policy *causing* a governmental employee (or employees)

---

[3] *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("judicial estoppel is an equitable doctrine invoked by a court at its discretion" (internal quotation marks omitted)); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("the court [may] allow[] [a judicial admission] to be withdrawn").

[4] The relevant portions of *Praprotnik* quoted herein are from Justice O'Connor's plurality opinion for herself, Chief Justice Rehnquist, Justice White, and Justice Scalia. The Tenth Circuit treats Justice O'Connor's plurality opinion as if a majority opinion. *See, e.g.*, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

to act in a manner that, in turn, causes the injury.  Sometimes these elements can be wrapped into a single person—that is, a decision by a single municipal employee may create municipal liability if that employee was also a "final policymaker" for the municipality on the matter in question.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).[5]  But either way, there must be a policy and a municipal employee's action (or inaction) according to that policy, leading to "to the deprivation of any rights, privileges, or immunities secured by the Constitution [or] laws [of the United States]."  42 U.S.C. § 1983.

The notion of "ratification" as a form of municipal liability originated with certain language in *Praprotnik*.  There, St. Louis transferred and eventually terminated a municipal employee, Praprotnik, for reasons that Praprotnik believed to be in violation of his First Amendment rights.  485 U.S. at 114–16.  A jury found in Praprotnik's favor and against St. Louis on a municipal liability theory, but the jury found against Praprotnik as to his supervisors, who had made the relevant employment decisions.  *Id.* at 116–17.  The verdict thus presented the question of how Praprotnik's supervisors' actions could be deemed St. Louis's actions, such that St. Louis was liable but the individual supervisors were not.  *Id.* at 117–18.

For the Supreme Court, the most important part of the answer was to identify where final policymaking authority existed in the municipality.  The court said that this was a matter of state law.  *Id.* at 124–26. But the Supreme Court anticipated "special difficulties" with this approach

---

[5] Similar to *Praprotnik*, this portion of *Pembaur* is a plurality opinion that the Tenth Circuit treats as a majority opinion.  *See, e.g.*, *Flanagan v. Munger*, 890 F.2d 1557, 1568 (10th Cir. 1989).

9

> when it is contended that a municipal policymaker has delegated his policymaking authority to another official. If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose.

*Id.* at 126 (citation omitted). The Supreme Court said "[i]t may not be possible to draw an elegant line that will resolve this conundrum, but certain principles should provide useful guidance." *Id.* at 126–27. One of those principles—from which the "ratification" theory has since sprung—is as follows:

> [T]he authority to make municipal policy is necessarily the authority to make *final* policy. [Citing *Pembaur*.] When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.* at 127 (emphasis in original).

In this light, it is probably misleading to refer to ratification as a distinct species of municipal liability. It is, instead, a means of identifying the governmental policy that caused a governmental employee (not him- or herself a final policymaker) to act in a manner that caused the injury. Perhaps at the time the employee acted, it was not clear whether he or she acted according or contrary to a governmental policy. But if the final policymakers examine the action "and the basis for it," and decide that the employee's conduct was in "conformance with *their* policies," the necessary link is clear. *Id.*

(emphasis in original). A policy exists, and, in the judgment of the final policymakers, the employee properly acted according to the policy.

Under the circumstances of this case, the phrase "and the basis for it" is central. It is the reason why the undersigned cannot agree with Judge Matsch's statement (which Judge Matsch appears to have partially backed away from in any event) that Denver is liable if any individual officer is liable because Denver reviewed the individual officers' conduct and found it to be within an unspecified city policy. Assuming the relevant policy governs use of force (or use of deadly force), it is all-important to understand what Denver's final policymakers believed to be true about the circumstances in which the officer used force. As Valdez has framed the case, so-called "ratification" liability could attach to Denver only if Valdez proves that Denver understood the facts as Valdez understands them—*i.e.*, that Motyka shot at him out of anger, even though he (Valdez) was surrendering and posed no threat—and approved of *that* scenario as within the relevant city policy.

The undersigned also cannot agree with Judge Matsch's apparent holding that this may be a "first of its kind" species of municipal liability because "the City expressly informed the public that the shooting of Valdez was justified and that Motyka complied with established policy and training." (ECF No. 124 at 9–10.) Such an announcement, by itself, cannot satisfy the municipal liability standard: "basic principals [*sic*] of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Such an announcement, without more, is only *evidence* of a city policy, and it is *relevant* evidence only if the city understood the facts to be as Valdez understands

11

them.

This connects with another theory raised in briefing (*see* ECF No. 155 at 6) and mentioned at the Status Conference, namely, Valdez's apparent belief that Denver understood the facts to be as he claims them to be, but Denver covered up those facts, presented a police-friendly account to the public, and then announced its approval of the police officers' actions under that fabricated version of events. A cover-up, without more, fails to create a causal link between the city employee's action in the municipal policy that allegedly caused him or her to act. A cover-up more plausibly suggests that the city employee acted *against* policy.

However, "[a] subsequent cover-up might provide circumstantial evidence that the city viewed [its] policy as a policy in name only and routinely encouraged contrary behavior." *Cordova*, 569 F.3d at 1194. Thus, a cover-up—if evidence of a cover-up exists—"might" be evidence from which a jury can infer an unwritten city policy of condoning essentially the opposite of what the written policy prescribes. Whether the cover-up alone would be enough evidence from which the jury could infer a pre-existing unwritten policy depends on the facts of the case.

A related theory, briefly mentioned in Judge Matsch's summary judgment order, is "inadequate investigation." (ECF No. 124 at 9.) Just as a cover-up cannot be the cause of the actions being covered up, an inadequate investigation cannot be the cause of the actions being investigated. But a pattern of inadequate investigation might be enough for a jury to infer the existence of an unwritten policy of tolerance toward actions contrary to the written policy.

**B.    Failure to Train**

In the arena of municipal liability, "failure to train" is a shorthand way of saying

that the municipality adopted a policy (formally or otherwise) of *not* training its employees to handle frequently encountered situations in a lawful manner, and did so with deliberate indifference to the likelihood that employees would therefore handle those situations *unlawfully*. *See City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989). In such a situation, the municipal no-training policy is deemed to be the cause of the injuries subsequently inflicted that are attributable to the lack of training. *Id*.

Here, there appears to be no misunderstanding about this theory of liability. The parties' disputes are centered around the scope of the Rule 30(b)(6) deposition in this regard, to which the Court turns next.

**C.      Rule 30(b)(6) Topics**

Valdez served Denver with a Rule 30(b)(6) notice enumerating seventeen topics that Valdez intended to explore. (ECF No. 63-3.) Valdez was willing to accept Denver's proposed narrowing of topics 1–10. (*See* ECF No. 63 ¶ 8; ECF No. 73 at 7–8.) The parties had reached an impasse on topics 11–17. Judge Matsch never resolve this impasse because of his conclusion that a Rule 30(b)(6) deposition was unnecessary. The undersigned finds, however, that Valdez should have an opportunity to develop his municipal liability theories, as clarified above, through a Rule 30(b)(6) deposition. The Court will therefore address topics 11–17.

*"11. Policies, customs, procedures, actual practices, and training for the Denver Police Department pertaining to officers who have been found liable in a civil judgment for wrongful arrest or excessive force, or who have exposed the City to liability for wrongful arrest or excessive force."*

The Court finds this topic to be irrelevant and otherwise disproportional to the case, considering that there is no showing that any of the officers involved here had

13

been found liable in a civil judgment before the events that led to this lawsuit. This topic is therefore disallowed.

*"12. Whether the actions and conduct of Robert Motyka, John Macdonald, Peter Derrick III, Karl Roller, and Jeff Motz, on January 16, 2013, did not conform to any of the policies, customs, procedures, actual practices, and training for the Denver Police Department."*

Denver aptly responds, "Denver has already completed its investigation into this officer involved shooting incident and Denver does not have an individual to designate to provide testimony contrary to the investigation findings." (ECF No. 63-4 at 5.) For this reason, this topic is disallowed.

*"13. Whether the City or the Denver Police Department has changed any of its policies, customs, procedures, actual practices, and training as a result of the events related to the shooting of Michael Valdez on January 16, 2013."*

This topic is allowed subject to Denver's proposed narrowing (ECF No. 63-4 at 5, ¶ 13).

*"14. Whether the City or the Denver Police Department has changed any of its policies, customs, procedures, actual practices, and training as a result of an allegation of excessive force against an officer since 2003."*

This topic is allowed except that the temporal scope is limited to *five* years before the date of the incident leading to this lawsuit.

*"15. Statistics related to the following subjects, from 2003 to the present: a. The number of officer-involved shootings; b. The number of officer-involved shootings in which a suspect was shot by police; c. The number of officer-involved shootings in*

*which a bystander or other citizen was shot by police; d. The number of civil judgments, settlements, and other civil cases in which a Denver Police Officer and/or the City was found liable for wrongful arrest or excessive force, and the name and case number of each case; e. The amount of money awarded in each of the above-referenced civil cases; f. The number of civil judgments, settlements, and other civil cases in which a Denver Police Officer and/or the City was found liable for a use of force involving discharging a firearm, the name and case number of each case, and the amount of money awarded in each case."*

Items "d" through "f" are disallowed as irrelevant and otherwise disproportional. Items "a" through "c" are allowed, subject to the understanding that the preamble adds nothing to the topics designated. In other words, Denver's Rule 30(b)(6) designee need not be prepared to discuss "statistics related to," *e.g.*, the number of officer-involved shootings. The designee need only be prepared to provide the numbers requested.

*"16. Performance evaluations of Denver Police Department officers during the years 2010 – 2015, or the lack thereof, and the reasons for any missing performance evaluations or whether and why performance evaluations were or were not performed in those years."*

This topic is allowed subject to Denver's proposed narrowing (ECF No. 63-4 at 6, ¶ 16).

*"17. Any response that the City of Denver or the Denver Police Department undertook following the jury verdict and settlement in the case of Martinez v. Valdez, et al., 11-cv102-MSK, including any additional training, supervision, counseling, training debriefing, alteration of employment conditions, for Robert Motyka, Jason Valdez or any*

15

*other officer involved in the lawsuit."*

The Court has significant reservations about the admissibility of whatever evidence Valdez may develop regarding this topic. However, "information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Accordingly, this topic is allowed as it relates to Motyka.

By allowing the foregoing topics, the Court makes no ruling on Denver's privilege objections, such as attorney-client and deliberative process. In the course of a deposition, Denver may stand on those objections, or not, as it sees fit.

Finally, to be clear, the purpose of allowing the Rule 30(b)(6) deposition is to cure the prejudice caused by Judge Matsch's denial of a Rule 30(b)(6) deposition. This order reopens discovery only to that extent.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Valdez's Motion to Compel Responses to Requests for Production of Documents and to Compel Defendants to Answer Deposition Questions (ECF No. 63) is, with respect to the request for a Rule 30(b)(6) deposition of Denver, GRANTED IN PART to the extent stated above;

2. Valdez may depose Denver's designated witnesses for a combined total of 35 hours, subject to enlargement or contraction for promptly-asserted good cause shown;

3. All depositions authorized by this order must conclude on or before **March 16, 2020**;

4. On or before **April 24, 2020**, Valdez shall file with the Court a "Notice of

Municipal Liability Theories" according to the following requirements:

   a. Valdez shall state each theory asserted in succinct, concrete terms, making clear the pre-existing municipal policy and the causal relationship between the policy and Motyka's alleged actions (*e.g.*, "For at least ___ years before January 16, 2013, Denver had a policy of not training its police officers regarding _____, which caused Motyka to _____ instead of _____ on January 16, 2013.");

   b. For each theory so stated, Valdez shall support it with factual assertions according to the requirements of WJM Revised Practice Standard III.E.3;

   c. Valdez may, if desired, follow those factual assertions with succinct legal argument;

5. If Denver concludes in good faith that one or more of the theories asserted in Valdez's Notice of Municipal Liability Theories fails to raise a genuine dispute of material fact, Denver may, on or before **May 15, 2020**, move for summary judgment *only* against the theory or theories set forth in said Notice, according to WJM Revised Practice Standard III.E;

6. If Denver files a motion for summary judgment, Valdez may respond (again according to WJM Revised Practice Standard III.E) on or before **June 5, 2020**; and

7. Considering the requirement that Valdez file his Notice of Municipal Liability Theories before Denver may file a summary judgment motion, and considering the short amount of time between Valdez's response deadline and the Final Trial Preparation Conference (scheduled for June 26, 2020), the Court will not accept

a reply from Denver in support of its summary judgment motion.

Dated this 16th day of December, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge