FILED
United States Court of Appeals
Tenth Circuit

March 20, 2020

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

MICHAEL VALDEZ,

    Plaintiff - Appellee/Cross – Appellant,

v.

ROBERT MOTYKA, JR., Denver Police Officer, in his individual capacity; CITY OF DENVER, a municipality,

    Defendants - Appellants/Cross-Appellees,

and

JOHN MACDONALD, Denver Police Officer, in his individual capacity,

    Defendant - Cross-Appellee.

Nos. 19-1182 and 19-1194
(D.C. No. 1:15-CV-00109-WJM-STV)
(D. Colo.)

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, **KELLY**, and **CARSON**, Circuit Judges.[**]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

These interlocutory appeals raise questions of qualified immunity and pendent appellate jurisdiction. In the pending civil rights action, Plaintiff-Appellee and Cross-Appellant Michael Valdez seeks recovery from Defendant-Appellants and Cross-Appellees Sergeant Robert Motyka, Lieutenant John Macdonald, and the City and County of Denver (Denver) under 42 U.S.C. § 1983. Mr. Valdez alleges that the individual defendants violated his Fourth Amendment rights when they shot him in the back and finger following a violent vehicle chase. On summary judgment, the district court granted qualified immunity to Lieutenant Macdonald, denied it to Sergeant Motyka, and determined that there was a genuine issue of material fact as to municipal liability on the theory that Denver ratified the actions of its officers. Valdez v. Macdonald, No. 15-cv-00109-RPM, 2019 WL 1651857 (D. Colo. Apr. 17, 2019). The case was ultimately reassigned to another district judge who certified these appeals as frivolous because it turned on evidentiary sufficiency no matter how else phrased. Valdez v. Motyka, 416 F. Supp. 3d 1250 (D. Colo. 2019).

In No. 19-1182, Sergeant Motyka challenges the district court's denial of qualified immunity claiming that it turns on questions of law. Should that challenge be successful, with the court finding as a matter of law that there was no constitutional violation on the part of Sergeant Motyka, Denver contends that we should exercise pendent appellate jurisdiction and reverse the district court's decision on allowing the municipal liability claim to advance. Aplt. Jt. Prin. Br. at 48–49. Mr. Valdez cross-appeals in No. 19-1194, arguing that if we accept jurisdiction over Sergeant Motyka's qualified immunity appeal, we should exercise pendent appellate jurisdiction over the

2

grant of qualified immunity to Lieutenant Macdonald because his conduct is virtually identical and he failed to intervene. Aplee./Cross-Aplt. Br. at 29. Because the denial of qualified immunity is based on evidentiary sufficiency, we lack jurisdiction and dismiss these appeals.

## Background

This case arises following a violent vehicle chase that occurred in the Denver metropolitan area on January 16, 2013. Earlier that morning, Johnny Montoya was involved in a domestic dispute involving a firearm. He fled the scene and an alert was put out for the red Dodge truck he was seen driving. At some point later that day, he picked up his brothers — Jude and Chuck Montoya — and a woman named Alyssa Moralez. They also picked up Mr. Valdez, an intellectually disabled, periodically homeless man, who asked for a ride. Shortly thereafter, Denver police officers spotted the truck and a chase ensued. At the time the chase began, Mr. Valdez was sitting in the truck bed but quickly climbed into the cab through the rear window.

At some point during the chase, someone in the cab of the truck began shooting at police vehicles in pursuit. A bullet struck Sergeant Motyka in the shoulder. He briefly pulled over to inspect the wound before re-joining the chase. Not long after, the truck crashed into a tree. Officer Jeremy Olive was the first to arrive on the crash scene. He observed Jude Montoya flee on foot but did not shoot at him. Moments thereafter, Sergeant Motyka arrived and began firing. He testified to shooting two rounds of six or seven shots. Lieutenant Macdonald was right behind Sergeant Motyka, and he also began shooting. During this altercation, Mr. Valdez was struck in the back and finger,

temporarily paralyzing him and causing permanent damage to his finger. The bullet in his back was later found to have come from Sergeant Motyka's gun but it was not determined which officer hit Mr. Valdez's finger.

After Mr. Valdez was struck, Sergeant Motyka withdrew from the scene. He testified that his vision had begun blurring because of the pain in his shoulder and he believed he was becoming a liability. The altercation continued for several more minutes with officers eventually shooting and killing Johnny Montoya after he was seen grabbing a handgun from the truck cab.

Mr. Valdez initiated the underlying action in 2015. In pertinent part, he claims excessive force and, as to municipal liability, that Denver ratified the actions of its officers by honoring them and claiming that they did not violate policy or procedures. A separate interlocutory appeal was filed previously resulting in the dismissal of several claims. Valdez v. Derrick, 681 Fed. App'x 700 (10th Cir. 2017). Thereafter, Mr. Valdez moved to voluntarily dismiss certain claims against some of the officers.

The district court denied qualified immunity to Sergeant Motyka based upon evidentiary sufficiency. It determined that, at a minimum, there were factual disputes that could demonstrate that Mr. Valdez was seized when shot and immobilized and that Sergeant Motyka's actions were objectively unreasonable. The district court authored the following narrative, which it determined could be the version of events that a reasonable juror might find after drawing all inferences in favor of Mr. Valdez:

> Motyka started shooting immediately on arrival at his position. He fired a burst of six or seven rounds. After a brief pause he fired another burst. Lt. Macdonald arrived in moments and started firing

in the same direction as Motyka. He shot six times. In his interview with DPD Motyka said that "probable cause is in my shoulder" suggesting he was acting out of revenge and anger at having been shot.

Chuck Montoya stayed in the truck bed. During the police pursuit and hearing gunshots, Valdez had crawled up into the cab through the rear window and crouched down above Moralez who was curled up on the floor.

Valdez and Moralez testified that they went out the passenger door immediately after Jude and went down to the ground in a prone position between the truck and a tree, facing into the park.

During the bursts of gunfire by Motyka and Macdonald Valdez was hit in a finger and in his back. The bullet that hit him in the back, causing serious injury, came from Motyka's gun. It was not possible to determine whether the bullet that hit his finger came from the shooting by Motyka or Macdonald. During the DPD investigation multiple bullets were found in the lower part of the tree and one on the grass near where Valdez had lain.

It is apparent that the area was sprayed with bullets permitting the inference that the officers were firing without aiming at a clear target.

Motyka was in extreme pain from the wound in his shoulder. In an interview with a DPD investigator on January 18, 2013, he said that the pain was causing him to nearly faint, saying that he saw a black cloud closing his peripheral vision and after shooting he backed off to avoid becoming a liability to the other officers. Macdonald helped him to a car. Motyka was very angry as well and very eager to get the occupant who shot him. In the same interview he said that he kept thinking about aiming with the front sight as he had been trained. These statements and the scattered bullets warrant an inference that Motyka started shooting without making any effort to determine whether there was any immediate threat to him or others as the occupants of the cab came out. Johnny Montoya was the last occupant to come out the passenger door. He was shot dead by other

5

> officers after failing to obey their commands several minutes after Motyka withdrew from the immediate scene.
>
> The shootings by Motyka and Macdonald are actions in sharp contrast to the conduct of Olive who was there first and who did not assess an immediate threat requiring shooting for the safety of the officers or anyone else.
>
> Both Motyka and Macdonald have said that they were firing at a man who had a gun and went to his knee to get into a firing position. Olive did not support that view. Presumably Johnny had a gun when he was shot.
>
> Three guns were found. DNA testing excluded Valdez as a source of what was found on them. Johnny Montoya had come out the passenger door and was standing when Valdez and Moralez were on the ground. He must not have been seen as an immediate threat by Olive or other officers until he was shot three minutes after Motyka and Macdonald were done shooting. They were about three car lengths away from the occupants when firing.

Valdez, 2019 WL 1651857, at *1–2. The district court granted qualified immunity to Lieutenant Macdonald after finding no clearly established law that rendered his conduct violative of the Fourth Amendment. Id. at *4. However, the court denied qualified immunity for Sergeant Motyka, finding that the question of whether Mr. Valdez presented an imminent threat — sufficient to justify Sergeant Motyka's decision to fire at him — was disputed in the record and best left to a jury. Id. at *3. The district court also denied Denver's motion for summary judgment on grounds that the City's public reasons for ratifying the conduct of Sergeant Motyka conflated "the conduct of John Montoya and Michael Valdez as threats requiring lethal force" which it believed was "contrary to what a jury may find." Id. at *4.

6

**A. Qualified Immunity as to Sergeant Motyka**

The denial of qualified immunity is a question of law we review de novo. Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2017). Plaintiffs seeking to overcome a qualified immunity defense must show that (1) the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. Mecham v. Frazier, 500 F.3d 1200, 1204 (10th Cir. 2007).

However, "a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 515 U.S. 304, 319–20 (1995). As such, "[t]his court [] lacks jurisdiction at this stage to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." Fancher v. Barrientos, 723 F.3d 1191, 1199 (10th Cir. 2013) (internal citations omitted). "[I]n reviewing the district court's rejection of [the defendant]'s qualified immunity defense, we must scrupulously avoid second-guessing the district court's determinations regarding whether [the plaintiff] has presented evidence sufficient to survive summary judgment." Id. (internal citations omitted) (emphasis in original).

Appellants argue that the district court committed legal error in finding that a reasonable jury could find for Mr. Valdez on his Fourth Amendment excessive force claim. However, the district court reached this conclusion only after discussing the sheer number of factual disputes presented by the record, and we have "no interlocutory

7

jurisdiction to review 'whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'" Estate of Booker v. Gomez, 745 F.3d 405, 409 (10th Cir. 2014) (quoting Johnson, 515 U.S. at 320); see also id. at 409–10 ("Thus, 'if a district court concludes that a reasonable jury could find certain specified facts in favor of the plaintiff, the Supreme Court has indicated we usually must take them as true[1]—and do so even if our own de novo review of the record might suggest otherwise as a matter of law.'" (quoting Roosevelt–Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013))). Here, the district court clearly articulated which factual disputes precluded granting qualified immunity to Sergeant Motyka and provided a detailed analysis of how those facts could lead to a jury's reasonable conclusion that Sergeant Motyka violated Mr. Valdez's Fourth Amendment rights. Though the Appellants argue legal errors pervade the district court's view of the facts concerning seizure and objective reasonableness, in the end they are challenging the district court's view of the facts. As a result, dismissal of these appeals is warranted. See Ralston v. Cannon, 884 F.3d 1060, 1067–68 (10th Cir. 2018).

**B.  Pendent Jurisdiction**

As noted, Denver's request that we exercise pendent appellate jurisdiction was conditional on an appellate finding that no individual constitutional violation occurred as a matter of law. Because we do not reach the legal merits of Sergeant Motyka's qualified

---

[1] "A key exception to Johnson's jurisdictional rule arises if a district court fails to specify which factual disputes precluded a grant of summary judgment for qualified immunity." Estate of Booker, 745 F.3d at 410. This exception is not applicable here as the district court clearly explained the relevant factual disputes.

immunity appeal and dismiss it, there is no predicate for pendent appellate jurisdiction on this basis.

Likewise, Mr. Valdez's request that we exercise pendent appellate jurisdiction over the grant of qualified immunity to Lieutenant Macdonald was conditional on affirming the denial of qualified immunity to Sergeant Motyka. Having not reached the merits of Sergeant Motyka's qualified immunity appeal, it is axiomatic that the grant of qualified immunity to Lieutenant Macdonald is neither inextricably intertwined or in aid of our decision in this case. See Tarrant Reg'l Water Dist. v. Sevenoaks, 545 F.3d 906, 915 (10th Cir. 2008).

**APPEALS DISMISSED.** All pending motions are denied.

        Entered for the Court

        Paul J. Kelly, Jr.
        Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

March 20, 2020

Jane K. Castro
Chief Deputy Clerk

David Cooperstein
Jennifer Johnson
Wendy Jean Shea
Office of the Denver City Attorney
Litigation Section
201 West Colfax Avenue, Department 1108
Denver, CO 80202

Jamie Hubbard
David George Maxted
Laura A Menninger
Jeffrey Pagliuca
Haddon, Morgan, and Foreman
150 East 10th Avenue
Denver, CO 80203

RE: 19-1182, 19-1194, Valdez v. Motyka, et al
Dist/Ag docket: 1:15-CV-00109-WJM-STV

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

CMW/sds