**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0109-WJM-STV

MICHAEL VALDEZ,

      Plaintiff,

v.

ROBERT MOTYKA, Jr., Denver Police Officer, in his individual capacity, and
CITY AND COUNTY OF DENVER, a municipality,

      Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART BOTH DEFENDANTS' JOINT MOTION *IN LIMINE* AND PLAINTIFF'S MOTION *IN LIMINE*

---

Defendant Robert Motyka, Jr., a Denver police officer, shot Plaintiff Michael Valdez at least once at the end of a car chase on the morning of January 16, 2013. Valdez claims that Motyka opened fire after all danger had passed, in violation of the Fourth Amendment, and that Denver has failed to train its police officers to prevent such violations. Familiarity with the parties' respective versions of events, recounted elsewhere (*e.g.*, ECF No. 152), is presumed.

Before the Court is Defendants' Joint Motion *in Limine* ("Defendants' Motion"), filed June 10, 2020. (ECF No. 197.) Also before the Court is Plaintiff Michael Valdez's Motion *in Limine* as to Defendants' Motyka and City and County of Denver ("Plaintiff's Motion"), filed June 10, 2020. (ECF No. 199.)

For the reasons explained below, Defendant's Motion is granted in part and

denied in part and Plaintiff's Motion is granted in part and denied in part.

## I.  LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ."  *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action."  Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## II.  DEFENDANTS' MOTION *IN LIMINE* (ECF No. 197)

Defendants argue that the Court should preclude evidence and argument regarding: (1) the dismissal of Plaintiff's criminal case stemming from this incident; (2) unrelated incidents involving Motyka's use of force; (3) a dramatized video reenactment of the events of January 16, 2013; (4) Defendants' experts who will not testify at trial; (5) comparisons of Motyka's conduct to other officers at the scene; (6) Plaintiff's allegation that unidentified Denver Police Department officers used force against Plaintiff at the end of the January 16, 2013 incident; and (7) punitive damages in Plaintiff's opening

2

statement, as well as other "inflammatory punitive damages language."  (ECF 197 at 1.)

## A.    Dismissal of Subsequent Criminal Case

Defendants anticipate that "Plaintiff may attempt to support his Fourth Amendment claim by seeking to introduce evidence that the criminal charges filed against him in connection with the underlying incident were dismissed."  (ECF No. 197 at 2.)  Defendants request that the Court preclude evidence regarding the dismissal of Plaintiff's criminal case because this evidence "has no bearing on whether a reasonable officer faced with the facts known to [Motyka] at the time [of] the incident would have had probable cause to believe that Plaintiff posed an imminent threat to the safety of [Motyka] or others."  (*Id.* at 3.)  According to Defendants, any evidentiary value of this information is "substantially outweighed by the dangers enumerated in Rule 403."  (*Id.* at 3–4.)

In response, Plaintiff argues that "while Defendants try to create an impression [Plaintiff] is guilty of a significant crime related to this case, they simultaneously seek to preclude evidence that would establish that impression as false."  (ECF No. 215 at 1.)  He argues that introduction of evidence that his criminal case was dismissed is "key" to avoid jury confusion.  (*Id.*)

The Court agrees with Plaintiff.  To be sure, the fact that Plaintiff's criminal charges were dropped has no bearing on whether Motyka used excessive force against Plaintiff on January 16, 2013.  *See Sebright v. City of Rockford*, 585 F. App'x 905, 907 (7th Cir. 2014) (recognizing that a majority of circuit courts have agreed that "the lawfulness of an arrest is irrelevant to an excessive force analysis"); *Beier v. City of*

3

*Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) ("Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa."). Nonetheless, the jury will undoubtedly hear testimony that Plaintiff was arrested after his encounter with Motyka on January 16, 2013. If the Court were to preclude testimony that Plaintiff's criminal charges were later dropped, the jury might incorrectly speculate that Plaintiff's arrest resulted in a criminal conviction, which would prejudice Plaintiff. *See, e.g.*, *Stroud v. Boorstein*, 2014 WL 5784639, at *2 (E.D. Penn. Nov. 5, 2014) (concluding in excessive force and battery case that "[p]rejudice may result to [p]laintiff if a jury were to learn that he was charged with [aggravated assault and reckless endangerment], but not hear that he was found not guilty of them"); *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 739 (N.D. Ill. 2004) ("While the disposition of the charge is not relevant to whether the defendants used excessive force, if the battery charge is mentioned, the disposition must be included in order to prevent the jury from assuming that [plaintiff] was found guilty.").

Of course, Defendants may elect *not* to introduce any evidence, or make or elicit any attorney or witness argument or comment, about Plaintiff's arrest on January 16, 2013. In such event, Plaintiff will similarly not be permitted to introduce evidence or make or elicit any attorney or witness argument or comment, about the fact that the subject criminal charges against him were subsequently dropped.

Accordingly, the Court denies this portion of Defendants' Motion.

4

**B.     Unrelated Incidents Regarding Motyka**

Defendants seek to preclude evidence under Federal Rules of Evidence 401, 403, and 404 regarding unrelated incidents regarding Motyka, namely: (1) the excessive force allegations made against Motyka in *Martinez v. Valdez*, Civil Action No. 11-cv-0102-MSK-KLM (D. Colo.); (2) complaints pertaining to use of force by Motyka in 2009 and 2010; and (3) statements made by Motyka during protests surrounding the Democratic National Convention in 2008.  (ECF No. 197 at 4.)  Specifically, Defendants contend that "Plaintiff cannot identify any way in which the proposed evidence could establish any element of liability with respect to his municipal liability claims" as "there is no factual similarity between the other allegations against [Motyka] and this incident," and "Plaintiff has not identified any evidence demonstrating that such complaints possessed merit."  (*Id.* at 4–5.)  Defendants further argue that the evidence constitutes improper character evidence under Rule 404 and that "any probative value of such evidence is substantially outweighed by the danger of prejudice" to Motyka.  (*Id.* at 5–6.)

Plaintiff responds that these incidents exemplify "Denver's pervasive failures to investigate use-of-force complaints and take corrective action," which are "among the municipality's 'deliberate action[s]' that are the 'moving force behind the plaintiff's deprivation of federal rights.'"  (ECF No. 215 at 2–3 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997)).)

However, in ruling on Denver's Motion for Summary Judgment (the "Summary Judgment Order"), the Court considered the probative value of the various use of force allegations made against Motyka in *Martinez v. Valdez* and the 2009/2010 complaints.

5

(ECF No. 224.)  As the Court noted in the Summary Judgment Order, "the jury actually found *against* Martinez on his claim that Motyka had used excessive force" and Denver did not conclude that Motyka had used excessive force in the 2009/2010 incidents.  (*Id.* at 6–7 (emphasis in original).)  Moreover,

> all three of the alleged excessive force incidents proffered by Valdez involved bodily force only (punching, kicking, etc.) in the process of taking someone into custody. They do not establish a pattern of failing to investigate officers' choices to discharge their firearms, which is a materially different situation.  *Cf. Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) ("In attempting to prove the existence of such a continuing, persistent and widespread custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." (internal quotation marks omitted)).

(*Id.* at 8.)  As a result, the Court concluded that the prior use of force incidents "have no probative value as to Denver's alleged failure to investigate and discipline Motyka for excessive force" and granted summary judgment in favor of Denver on Valdez's failure-to-investigate/discipline theory of *Monell* liability.[1]  (*Id.* at 8.)

Plaintiff also argues that evidence of Motyka's prior use of force incidents are admissible under Rule 404(b) to show the absence of mistake.  (ECF No. 215 at 3 ("Should Defendants argue the shooting of [Plaintiff] was a one-time error or the product of Motyka's mistaken circumstances, past incidents allow the jury to infer instead that the events in question arise from a style of policing, not a mistake.").)

Under Rule 404(b)(1), the admission of evidence of a crime or "bad act" to prove

---

[1] Plaintiff does not argue that evidence regarding Motyka's prior use of force incidents is

a person's character "in order to show that on a particular occasion the person acted in accordance with the character" is precluded from the jury's purview. However, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Such evidence is admissible if four factors are satisfied: (1) the evidence is offered for a proper purpose; (2) the evidence is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the district court provides an appropriate limiting instruction upon request. *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005).

Although Plaintiff argues that Motyka's other use of force incidents should be permitted to show absence of mistake,[2] the Court notes that Motyka does not argue that he mistakenly shot at Plaintiff or did not know of the type and degree of force that he used on Plaintiff. To the contrary, Defendants' own version of the facts confirms that Motyka *intentionally* fired at Plaintiff in what they contend was a reasonable use of force under the circumstances. (*See* ECF No. 152 at 6–10.) Thus, Plaintiff has failed to show that evidence regarding Motyka's other use of force incidents is relevant at this stage. *See Chavez*, 402 F.3d at 1046 (finding district court did not abuse its discretion

_____

relevant to his remaining failure to train theories of *Monell* liability. (*See generally* ECF No. 215.)

[2] To the extent Plaintiff wishes the jury to conclude that Motyka often intentionally uses excessive force, such evidence is inadmissible under Rule 404(a). *See Tanberg v. Sholtis*, 401 F.3d 1151, 1170 (10th Cir. 2005) ("If, as seems only too likely, [p]laintiffs wished the jury to infer that Officer Sholtis often intends to use excessive force when arresting the hapless innocents who cross his path, the evidence is offered to prove propensity rather than for a proper purpose, and was properly excluded.").

in precluding evidence of prior excessive force claims regarding use of police dog under Rule 404(b) where "[t]here was no claim or defense suggesting that [the officer] accidentally or mistakenly used the police dog").

Even if this evidence were relevant, the probative value of introducing evidence of Motyka's other use of force incidents to show an absence of mistake is substantially outweighed by the danger of unfair prejudice to Defendants, particularly given: (1) the lack of similarity between the Motyka's other alleged use of force incidents and the events of January 16, 2013, and (2) the fact that the record of Motyka's other incidents does not unambiguously permit the conclusion that he used excessive force. *See Tanberg*, 401 F.3d at 1170 ("Given the lack of similarity between the other acts evidence and [p]laintiffs' arrest, and the fact that the record does not permit the conclusion [defendant] used excessive force in the other arrests, the proffered evidence would do little to establish [defendant's] awareness that his use of force in arresting [p]laintiffs might be problematic."); *see also Martinez v. Gabriel*, 2013 WL 798236, at *2 (D. Colo. March 5, 2013) (determining the probative value of summaries of past administrative investigations into officers involved in the action is "substantially outweighed by the danger of prejudice").

Thus, the Court grants this portion of Defendants' Motion. Plaintiff is precluded from introducing evidence and/or argument regarding: (1) the allegations made against Motyka in *Martinez v. Valdez*; (2) complaints pertaining to uses of force by Motyka in 2009 and 2010; and (3) statements made by Motyka during protests surrounding the Democratic National Convention in 2008.

8

C.    **Video Reenactment of the January 16, 2013 Encounter**

Defendants next seek to exclude evidence of a dramatized video reenactment of Motyka's encounter with Plaintiff, which was created by the Denver Police Foundation and presented at an award ceremony honoring Motyka and other officers involved in the January 16, 2013 encounter.[3]  (ECF No. 197 at 7.)  According to Defendants, "[t]he reenactment does not accurately depict the incident, nor does it reflect any version of the events offered by [Motyka], nor any other trial witness" and therefore constitutes inadmissible hearsay and lacks probative value.  (*Id.*)

Plaintiff counters that the reenactment portion of the video is admissible against Motyka under Federal Rules of Evidence 802(d)(2)(B) and 802(d)(2)(C) as an adoptive admission and authorized statement.  (ECF No. 215 at 3.)  Moreover, Plaintiff contends that "the video is the best evidence of glorification of bad police tactics."  (*Id.* at 4.)

The Court is very troubled by the fact that a non-profit organization in some way affiliated with the Denver Police Department would create a dramatized video reenactment of Motyka's January 16, 2013 encounter with Plaintiff, and then play the video at an award ceremony.  However, notwithstanding the distasteful and highly troubling nature of the video (to say nothing of the motive and intent of such an organization in creating such a video), the Court cannot conclude that the dramatized video reenactment should be admissible at trial.

Importantly, although Plaintiff argues that "Motyka never disavowed the truth of

_____

[3] Defendants do not seek to preclude the entire video played at the award ceremony, just the portion of the video containing the reenactment.  (*See* ECF No. 197 at 7 n.3.) Accordingly, the Court will confine its analysis and ruling to the portion of the video containing

the reenactment" and that portions of the reenactment "tracks" Motyka's statements, Plaintiff does not contend that the reenactment is an *accurate* depiction of the events of January 16, 2013.  For the Court, this is the dispositive factor for determining the admissibility of the reenactment video.  After all, visual evidence generally has a very powerful effect on a trier of fact.  The likelihood that a jury will mistakenly conclude that the reenactment—which, critically, was not created by either Motyka or Denver—is intended to reflect Defendants' version of January 16, 2013 outweighs any probative value that it may have.

Thus, the Court grants this portion of Defendants' Motion.  Plaintiff is precluded from introducing evidence of and/or argument regarding the dramatized video reenactment of the January 16, 2013 encounter.

**D.     Defendants' Experts**

Defendants anticipate that "Motyka and the other involved officers, who were previously defendants in this case, could be asked questions pertaining to meetings they held with Defendants' non-testifying experts Ron McCarthy and Tom Martin."  (ECF No. 197 at 8.)  Defendants ask that "Plaintiff not be allowed to reference Mr. McCarthy and Mr. Martin because it may lead jurors to conclude that Mr. McCarthy and/or Mr. Martin are not testifying at trial because they had opinions that were not favorable to Defendants."  (*Id.*)

In response, Plaintiff contends that Motyka and other then-defendants "met together in the presence of their counsel *and* each of their two retained experts,

---

the dramatized reenactment of the events of January 16, 2013.

including their 'crime scene reconstruction' expert" twice "to discuss their varying accounts of the shooting."  (ECF No. 125 at 4.)  Accordingly, Plaintiff argues that "[t]he jury is entitled to understand Motyka's and Denver's extensive efforts to coordinate the officers' stories as impeachment of their in-court testimony."  (*Id.*)

The Court agrees that to the extent Motyka met with other officers involved in the January 16, 2013 encounter to coordinate their stories, this fact and the extent to which their stories evolved and changed over time are undoubtedly fair game for Plaintiff to explore during trial as impeachment testimony.  Nonetheless, the Court also agrees with Defendants that there is a risk that the jury may erroneously conclude that McCarthy and Martin are not testifying at trial because they hold opinions that are unfavorable to Defendants.  Thus, while the Court will permit Plaintiff to explore Motyka and other witnesses' shifting stories, Plaintiff will not be permitted to explore the fact that Defendants' experts are no longer testifying at trial.

According, this portion of Defendants' Motion is granted in part and denied in part as set forth herein.

## E.     Comparisons of Motyka's Conduct With Other Officers' Conduct At the Scene on January 16, 2013

Defendants "anticipate Plaintiff will attempt to argue that [Motyka's] use of lethal force against Plaintiff was unreasonable because Officer Jeremy Olive, who was the first officer on scene, did not direct any force at Plaintiff," and will compare Motyka's conduct with that of "later arriving officers."  (ECF No. 197 at 9–10.)  Defendants therefore request that the Court preclude any argument and testimony comparing

Motyka's conduct with the conduct of the other officers at the scene, arguing that such evidence is irrelevant to Plaintiff's excessive force claim against Motyka.  (ECF No. 197 at 8–9.)  In support of their request, Defendants argue that "[f]ederal courts have repeatedly noted that the subjective beliefs and decisions of non-party officers are not relevant to an excessive force claim because, in evaluating the objective reasonableness of an officer's actions, the focus is on what that officer reasonably perceived at the time and whether a reasonable officer armed with the same information would have had the same perception and acted in a like fashion."  (*Id.* at 8–9.)

In assessing Plaintiff's excessive force claim, the jury must consider "whether [Motyka's] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to [his] underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  However, while it may be true that the "subjective lack of fear" of an officer with a different perspective of an encounter "sheds little weight on whether [defendant's] conduct was objectively reasonable," *Penley v. Eslinger*, 605 F.3d 843, 852 (11th Cir. 2010), the Court cannot conclude that the perspectives of other officers at the scene are irrelevant.  The manner in which other officers acted during the January 16, 2013 encounter may well bear on whether Motyka's actions were objectively reasonable.  Moreover, such information is critical to set the scene for the jury.  To the extent the parties dispute whether the other officers at the scene had the same particularized information as Motyka (and therefore are proper comparators of objectively reasonable conduct), the parties will have ample opportunity to explore this subject matter on cross-examination and in attorney argument.  However, precluding

any argument on this topic would be inappropriate at this juncture.

Accordingly, this portion of Defendants' Motion is denied.

**F.     Allegations of Subsequent Excessive Force by Other Officers**

Defendants seek to preclude testimony that after Plaintiff was shot, "an unidentified [Denver Police Department] officer tried to make him stand up and, when he couldn't, pulled him up by the neck into a headlock position then dragged him toward[ ] the street where another unidentified officer squeezed his legs to slam him on a gurney." (ECF No. 197 at 11.) Defendants contend that such evidence is "not relevant to the claims in this case and could be highly prejudicial" to Motyka. (*Id.*)

In response, Plaintiff contends that "[t]he mistreatment of Mr. Valdez is 'inextricably intertwined' evidence," is "necessary to complete the party's story," and is relevant to damages. (ECF No. 215 at 5–6.) The Court agrees with Plaintiff.

Of course, Plaintiff's contention that other officers subjected him to excessive force does not tend to make it more or less likely that *Motyka* engaged in excessive force. The Court also recognizes that Plaintiff's introduction of evidence of other officers' conduct may cause some prejudice to Motyka; however, such prejudice is outweighed by the Plaintiff's need to exhaustively recount all events of January 16, 2013 and to explain the full nature of his injuries. *See Guzman v. City of Chicago*, 2010 WL 11627265, at *2 (N.D. Ill. Feb. 26, 2010) (recognizing that evidence of other officers' conduct is necessary to fully explain the events and therefore is relevant to provide context and to complete the party's story).

Accordingly, the Court denies this portion of Defendants' Motion. Nonetheless,

Plaintiff is advised that this aspect of the January 16, 2013 encounter is not of primary importance in this case and should not receive significant attention during trial.

## G.    Discussion of Punitive Damages

Defendants request that the Court preclude Plaintiff "from mentioning punitive damages until closing statements" on the basis that a "premature reference to punitive damages, directly or indirectly[,] has a strong possibility of inflaming the passions of the jury, thus causing prejudice to the Defendants." (ECF No. 197 at 11–12.)  Defendants further ask that Plaintiff be "barred from using inflammatory language in support of" his punitive damages claim, such as asking jurors to "send a message," "act as the conscience of the community," or "place themselves in Plaintiff's shoes." (*Id.* at 12.)

Plaintiff responds that he "has not only a right but a responsibility to select jurors able to follow the law regarding punitive damages and also to give selected jurors a roadmap of evidence that will lead them to award punitive damages at the conclusion of the case." (ECF No. 215 at 6.)

The Court concludes that Plaintiff's ability to present a roadmap of his case in the manner as he sees fit outweighs any potential prejudice from allowing Plaintiff to reference punitive damages prior to his closing argument.  Further, the Court will instruct the jury on the appropriate standard for punitive damages after closing arguments and presumes that the jury will analyze the parties' evidence according to that standard, not based on attorney argument.  *See Morgan v. Baker Hughes Inc.*, 947 F.3d 1251, 1260 (10th Cir. 2020) (recognizing that courts presume that the jury follows its instructions during deliberations).

Moreover, to the extent Defendants seek a pretrial ruling on the specific language that Plaintiff's counsel may use when discussing the punitive damages claim, this request is denied.  The Court expects that counsel are aware of the appropriate limits of attorney argument at trial within the Tenth Circuit, and will tailor their arguments accordingly.

Accordingly, this portion of Defendants' Motion is denied.

### III.  PLAINTIFF'S MOTION (ECF No. 199)

Plaintiff argues that the Court should preclude evidence and argument regarding: (1) the alleged criminal actions by the Montoya family occurring prior to the January 16, 2013 shooting; (2) events subsequent to January 16, 2013 involving the Montoya family; (3) Plaintiff's criminal history; (4) Plaintiff's history of prison sentences, drug use, and homelessness; and (5) undisclosed expert opinion testimony by law enforcement officers.  (ECF No. 199.)

**A.     Events of January 16, 2013 Preceding Motyka's Shooting of Plaintiff**

Plaintiff anticipates that Defendants "intend to offer evidence concerning earlier alleged criminal acts by persons in the red truck that occurred without the knowledge or participation of [Plaintiff] and also evidence concerning activities of the red truck's driver."  (ECF No. 199 at 3.)  Plaintiff contends that "[b]ecause Motyka was unaware of the events earlier in the day concerning the 'red truck' and its occupants (minus [Plaintiff]), such evidence is irrelevant to the question" of whether Motyka's actions are objectively reasonable and should therefore be precluded.  (*Id.*)

In response, Defendants argue that Plaintiff's argument is based on a "false

15

premise" that Motyka was unaware of the criminal activity of the red truck's occupants prior to the shooting.  (ECF No. 217 at 1–2.)  Defendants note that on the afternoon of January 16, 2013, "Motyka (along with all other officers) had received 'Be On the Lookout' ('BOLO') alerts about the truck and the passengers," which warned dispatchers and officers of "several incidents involving 97 Re[d]" vehicle, and "Sus[pect] Veh[icle] in felony menacing Thornton / shots fired . . . Per Thornton Johhny Montoye [*sic*] strung out meth had blk semi auto handgun."  (*Id.* at 2.)  They argue that "[s]ince it is incorrect for Plaintiff to maintain that [Motyka] 'was completely unaware' of these events, it is equally mistaken to assert that" such evidence is irrelevant to the determination regarding the reasonableness of Motyka's actions.  (*Id.*)  Defendants further contend that if Plaintiff testifies regarding his own innocence or his actions that day prior to the shooting, then Defendants' contrary evidence rebutting those assertions must also be relevant and admissible.  (*Id.*)

     The Court finds that evidence of prior activity by the red truck's occupants of which Motyka was unaware could not have informed his perception of risk when he arrived on the scene and is therefore irrelevant to Plaintiff's excessive force claim and unfairly prejudicial to Plaintiff.[4]  However, to the extent that Motyka had demonstrable, *personal knowledge* of activity of the red truck's occupants prior to making contact with Plaintiff, such evidence is relevant to the reasonableness of Motyka's actions and will be permitted at trial.

_____

[4] The Court makes no finding at this time regarding whether certain evidence regarding the prior criminal activities of the red truck may be admissible as impeachment evidence in the event that Plaintiff testifies.

16

Thus, the resolution of this portion of Plaintiff's Motion depends on the specific evidence introduced at trial regarding Motyka's personal knowledge.  Defendants are on notice that the Court will sustain objections to the introduction of evidence regarding prior criminal activity by the red truck's occupants unless and until Defendants introduce evidence of Motyka's prior actual knowledge regarding these topics.

Accordingly, this portion of Plaintiff's Motion is denied without prejudice to being renewed as an objection(s) at trial.

**B.    Events Subsequent to January 16, 2013 Involving the Montoya Family**

Plaintiff seeks to preclude evidence regarding events involving the Montoya family after January 16, 2013.  (ECF No. 199 at 4.)  Specifically, he contends that:

- Johnny Montoya was killed during the January 16, 2013 encounter with police, and drugs were subsequently found in his system;

- Chuck Montoya was convicted at trial of various crimes and is serving a state sentence of 151 years' imprisonment;

- Jude Montoya pled guilty to attempted murder and is serving a state sentence of 40 years' imprisonment;

- Alyssa Moralez was interviewed by police and released; and

- The "Montoyas and their family members made threatening statements to and concerning law enforcement, widely discussed their gang affiliations and drug distribution, and other bad acts."

(*Id.*)  Plaintiff argues that "[t]here is absolutely no evidence that [he] had any role or participation in any of these events" and that evidence regarding these events does not

17

bear on the question about whether Motyka used excessive force.  (*Id.* at 4–5.)  Thus, according to Plaintiff, "[t]he evidence is not only irrelevant under Rule 401, but highly and unduly prejudicial under Rule 403 because it implies that [Plaintiff] had knowledge or of participation in any of these subsequent proceedings when there is no evidence that he did."  (*Id.* at 5.)

In response, Defendants argue that such evidence is relevant to Plaintiff's claim that Denver failed to properly investigate and discipline its police officers for the use of force and that "Denver must have the ability to defend itself with evidence of the complete and thorough investigation that followed the shooting."  (*Id.* at 2–3.)  However, after Plaintiff's Motion was fully briefed, the Court granted summary judgment in favor of Denver on Plaintiff's failure-to-investigate/discipline theory of *Monell* liability.  (ECF No. 224 at 8.)  Thus, evidence regarding subsequent events involving the Montoya family is no longer relevant to Plaintiff's *Monell* claim against Denver.[5]

Defendants next argue that "[t]he investigation . . . uncovered facts that may bear on the accuracy of testimony, from Plaintiff and others, regarding the totality of circumstances facing [Motyka] when he made his decision to employ deadly force," and that Defendants should be entitled to rebut inconsistent testimony.  (ECF No. 217 at 3.)  They further argue that Plaintiff has accused Motyka of making inconsistent statements about the facts of this case during the Montoyas' criminal case and that Motyka must be permitted to explain the context in which his statements were made, including that the

---

[5] Defendants do not argue that such evidence is relevant to Plaintiff's failure to train theory of *Monell* liability against Denver.

threats influenced his testimony.  (*Id.* at 4.)

Specific evidence regarding the fates of the Montoya family members may be admissible as impeachment or rebuttal evidence *if, and only if,* Plaintiff's witnesses first open the door to this evidence.  Absent such a development, however, Defendants will not be permitted to introduce evidence regarding the Montoya family after January 16, 2013, as the evidence is highly prejudicial to Plaintiff.

Accordingly, this portion of Plaintiff's Motion is granted as set forth herein.

## C.    Plaintiff's Criminal Convictions

Federal Rule of Evidence 609 governs when and how a witness's prior convictions may be used to impeach a witness's character for truthfulness at trial:

> (a) In General.  The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
>> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>>
>>> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
>>>
>>> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>>
>> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

19

> (b) Limit on Using the Evidence After 10 Years.  This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.  Evidence of the conviction is admissible only if:
>
> > (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> >
> > (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Plaintiff represents that he has two state felony convictions—from 1996 and 2015—as well as various misdemeanor convictions.  (ECF No. 199 at 6, 8.)  He requests that the Court preclude evidence regarding his prior convictions.  (*Id.*)  Defendants do not specifically respond to Plaintiff's request to exclude the 1996 conviction and misdemeanor convictions.  (*See generally* ECF No. 217.)  As a result, this portion of Plaintiff's Motion is granted, and Defendants are precluded from introducing evidence regarding Plaintiff's 1996 felony conviction and misdemeanors.

Plaintiff contends that his 2015 felony conviction for "Attempted Assault on a Peace Officer of the Second Degree" has no bearing on whether Motyka's use of force in January 2013 was objectively reasonable and that this is not a case in which Plaintiff's credibility is of central importance.  (ECF No. 199 at 7–8.)  Moreover, according to Plaintiff, "the similarity of the prior crime to [D]efendants' theory in this case —that Mr. Valdez posed a threat to a peace officer—weighs *against* admission because the prejudicial effect (suggesting a propensity to commit the crime) outweighs its probative value."  (*Id.* at 8 (emphasis in original).)

20

In response, Defendants argue that Plaintiff's "recent felony conviction is admissible under the plain terms of [Rule] 609." (ECF No. 217 at 4.)  They contend that the "[f]acts underlying Plaintiff's 2015 arrest and felony conviction are also relevant to Plaintiff's claims of physical disability" as officers involved in that arrest purportedly observed Plaintiff "running without the use of any mobility aids while using both arms" and "violently resist[ing] arrest in a manner inconsistent with his claims of partial paralysis" as a result of the events of January 16, 2013.  (*Id.* at 5.)

The Court agrees with Plaintiff that his 2015 arrest and conviction are highly prejudicial and should be precluded according to Rule 403.  After all, Plaintiff's conviction for Attempted Assault on a Peace Officer of the Second Degree is directly comparable to Defendants' theory regarding the events of January 16, 2013.  There is a high likelihood that a jury would improperly consider that conviction as evidence suggesting that Plaintiff posed a threat to Motyka that justified his use of force.  The prejudice to Plaintiff therefore outweighs the impeachment value of the conviction.  Thus, notwithstanding Rule 609(a), Defendants will not be allowed to introduce Plaintiff's 2015 conviction.

Nonetheless, Plaintiff may open the door during trial by arguing that he has become partially disabled as a result of the events of January 16, 2013.  If this happens, the facts underlying Plaintiff's 2015 conviction may become relevant as rebuttal evidence or as impeachment evidence.  However, unless and until Plaintiff opens that evidentiary door, Defendants will not be permitted to introduce evidence regarding Plaintiff's 2015 conviction.

21

Accordingly, this portion of Plaintiff's Motion is granted in part and denied in part as set forth herein.

**D.      Plaintiff's Prison Sentences, Drug Use, and Homelessness**

Plaintiff seeks to exclude evidence of Plaintiff's prison sentences, prior drug use, and prior homelessness, arguing that this evidence is irrelevant and unduly prejudicial. (ECF No. 199 at 8–9.)

In response, Defendants note that Plaintiff is seeking "economic damages and non-economic damages, including but not limited to medical expenses, pain and suffering, mental anguish, emotional suffering, loss of enjoyment of life, loss of earning potential, and punitive damages."  (ECF No. 217 at 5 (quoting ECF No. 46 at 7).) According to Defendants,

> [e]vidence of Plaintiff's time in prison, drug use, and homelessness will bear on whether he can establish the existence of any mental anguish, lost earning potential, or loss of enjoyment of life; how and at what amount to value such losses, if they exist; and the extent to which the shooting caused or contributed to any such damages.

(*Id.*)

The Court agrees that evidence regarding Plaintiff's prior sentences, drug use, and homeless *may* bear on his claims for economic and non-economic damages as a result of the events of January 16, 2013.  *See, e.g.*, *Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 784–85 (7th Cir. 2011) (recognizing that evidence of decedent's "drug addiction and legal problems" are relevant to issue of damages for "loss of companionship" and "enjoyment of life" where decedent's son put decedent's character

and life prospects into question); *Zibolis-Sekella v. Ruehrwein*, 2013 WL 12177858, at *2 (D.N.H. Oct. 8, 2013) (recognizing that danger of unfair prejudice from introducing evidence of decedent's drug use is outweighed by the relevance of drug use to a claim for damages for loss of enjoyment of life).  Thus, to the extent that Plaintiff opens the door by presenting testimony of his lost earning potential or lost enjoyment of life that can be reasonably rebutted with evidence of Plaintiff's prior sentences, drug use, and/or homelessness, Defendants may introduce such evidence *solely* on the issue of damages.

However, if Plaintiff *does not* open the door to the introduction of this evidence through his testimony or argument regarding damages, then the danger of unfair prejudice of such evidence outweighs its probative value.  In such a scenario, Defendants will be precluded from introducing evidence of Plaintiff's prior sentences, drug use, and/or homelessness.

Accordingly, this portion of Plaintiff's Motion is denied without prejudice to being raised at trial.

## E.      Undisclosed Law Enforcement Expert Opinion Testimony

Plaintiff notes that Defendants did not disclose any non-retained experts from whom opinion testimony may be elicited at trial and that "[i]t is unclear what other opinions based on 'training and experience' that any of the witness law enforcement officers may attempt to offer as testimony during the trial."  (ECF No. 199 at 11.) Plaintiff therefore asks that "this Court rule *in limine* that Defendants['] witnesses will not be permitted to testify concerning their 'opinions,' whether based on their training and

experience, but rather they instead be limited to their perceptions and observations in the performance of their duties."  (*Id.*)

Plaintiff is effectively asking the Court for an order stating that it will apply Federal Rule of Evidence 701.  *See* Fed. R. Evid. 701 (opinion testimony by lay witnesses is limited to opinions that are (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702).  Such an order is unnecessary in a pre-trial setting.

To the extent the parties have concerns about the admissibility of specific testimony by lay witnesses, the Court will entertain evidentiary challenges to that testimony at trial.  Accordingly, this portion of Plaintiff's Motion is denied without prejudice to being reasserted at trial.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Joint Motion *in Limine* (ECF No. 197) is GRANTED IN PART AND DENIED IN PART, as set forth herein; and

2. Plaintiff Michael Valdez's Motion in Limine as to Defendants' Motyka and City and County of Denver (ECF No. 199) is GRANTED IN PART AND DENIED IN PART, as set forth herein.

Dated this 24th day of March, 2021.

BY THE COURT:

William J. Martinez
United States District Judge