IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-0109-WJM-STV

MICHAEL VALDEZ,

    Plaintiff,

v.

ROBERT MOTYKA, Jr., Denver Police Officer, in his individual capacity;
CITY AND COUNTY OF DENVER, a municipality,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM VIA VIDEO CONFERENCE OR, ALTERNATIVELY, IN PERSON

---

Defendant Robert Motyka, Jr., a Denver police officer, shot Plaintiff Michael Valdez at least once at the end of a car chase on January 16, 2013. Valdez claims that Motyka opened fire after all danger had passed, in violation of the Fourth Amendment, and that the City and County of Denver has failed to train its police officers to prevent such violations. Familiarity with the parties' respective versions of events, recounted elsewhere (*e.g.*, ECF No. 152), is presumed.

Before the Court is Defendants' Motion for Writ of Habeas Corpus Ad Testificandum Via Video Conference Or, Alternatively, In Person ("Motion"), filed on June 12, 2020. (ECF No. 210.) Plaintiff responded on July 6, 2020 (ECF No. 223), and Defendants replied on July 20, 2020 (ECF No. 225).

For the reasons set forth below, the Motion is granted.

## I. BACKGROUND

In January 2014, Chuck Montoya was convicted at trial in Denver District Court of three counts of attempted murder and three counts of first-degree assault based on the events of January 16, 2013. (ECF No. 223 at 1.) He was sentenced to 80 years' imprisonment in November 2014. (*Id.*)

In December 2014, Jude Montoya pled guilty to one count of attempted murder. (*Id.* at 3.) On January 29, 2015, he was sentenced to 40 years' imprisonment. (*Id.*)

According to the Colorado Department of Corrections' ("CDOC") Offender Search website, Jude and Chuck Montoya are incarcerated at the Sterling Correctional Facility and Buena Vista Correctional Complex, respectively. *See* CDOC Offender Search, available at http://www.doc.state.co.us/oss/index.php?ref=home (last visited March 31, 2021).

## II. LEGAL STANDARD

A court may issue a writ of habeas corpus ad testificandum to procure a prisoner's presence and testimony if "[i]t is necessary to bring him into court to testify or for trial." 28 U.S.C. § 2241(c)(5). Whether to issue the writ "rests in the sound discretion of the trial court." *Brady v. United States*, 433 F.2d 924, 925 (10th Cir. 1970); *see also Hawkins v. Maynard*, 1996 WL 335234, at *1 (10th Cir. June 18, 1996).

To determine whether to issue a writ of habeas corpus ad testificandum, a court must "weigh the prisoner's need to be present against concerns of expense, security, logistics and docket control." *Hawkins*, 1996 WL 335234, at *1 (citing *Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 111–12 (4th Cir. 1988)). The party requesting the writ must demonstrate that the testimony sought is "relevant, necessary,

and non-cumulative" by: "(i) describe[ing] the general scope of [that witness's] testimony . . . (ii) indicat[ing] whether any other witness will be testifying as to the same facts, and, if so, explain why [that witness's] testimony is not needlessly cumulative . . . and (iii) explain[ing] how that testimony is relevant to the claims or defenses at issue [in this case]." *Smith Bey v. Gibson*, 2007 WL 622289, at *1 (D. Colo. Feb. 23, 2007); *see also United States v. Price*, 444 F.2d 248, 250 (10th Cir. 1971) (recognizing that the "right to have a defense witness procured is of course not absolute").

The burden of proving the "necessity of a witness's testimony" is on the party seeking the writ, and a party's "failure to carry this burden is a legitimate basis to deny a request to procure the presence of a witness." *United States v. Murphy*, 460 F. App'x 122, 125 (3d Cir. Feb. 6, 2012) (internal quotation marks omitted).

### III. ANALYSIS

Defendants ask the Court to issue writs of habeas corpus ad testificandum ordering CDOC to produce Jude and Chuck Montoya to testify at trial via video conference or in person. (ECF No. 210 at 1.) Defendants contend that the Montoyas' testimony is "relevant, necessary, and noncumulative" as they "each witnessed the events that transpired between the time that Plaintiff first met up with the occupants of the red truck through the termination of the pursuit." (*Id.* at 4.) They represent that:

> Each of the Montoyas is in possession of information bearing on, and (as hinted at by the criminal charges described above) took actions that contributed to the totality of the circumstances attendant to Sgt. Motyka's use of deadly force. Thus, the Montoyas' testimony is relevant because (1) it bears directly on the elements of the legal claims in this case, (2) provides relevant information regarding the events immediately preceding the shooting, and (3) may contradict Plaintiff's testimony on these issues.

3

(*Id.* at 5.) Defendants further contend that the Montoyas' testimony will "directly contradict Plaintiff" with respect to "his purported ignorance in accepting a ride in the truck," "his innocence of criminal conduct during the pursuit," and "his positioning at the time he was shot." (ECF No. 225 at 1–2.)

In response, Plaintiff contends that "Defendants have failed to demonstrate that the testimonies of Jude Montoya and Chuck Montoya each are 'necessary to establish an adequate defense.'" (ECF No. 223 at 6 (quoting *United States v. Swindler*, 476 F.2d 167, 170 (10th Cir. 1973)).) With respect to events that transpired after Plaintiff entered the truck on January 16, 2013, Plaintiff contends that "Defendants cannot explain what the Montoyas will testify to that would be necessary to resolve the question of whether [Motyka] deployed excessive use of force." (*Id.* at 10.) Specifically, Plaintiff states that "Jude Montoya had fled the scene by the time [Plaintiff] was shot" and "Chuck Montoya was unconscious in the bed of the truck until after [Plaintiff] was shot."[1] (*Id.*) Plaintiff further argues that the probative value of the Montoyas' testimony is outweighed by danger of unfair prejudice in light of their criminal charges. (*Id.* at 11 (noting that "[it] may be proper for the jury to consider the convictions, including the nature of the offenses, when assessing the witness's credibility").)

Jude and Chuck Montoya are some of the only living, non-party witnesses to the January 16, 2013 car chase in which the occupants of the red truck were purportedly shooting at Denver Police Department officers, including Motyka, and to Motyka's subsequent shooting of Plaintiff. (ECF No. 225 at 6.) Specifically, as Defendants point out, Jude Montoya provided a recorded statement to investigators that may

---

[1] As explained below, Chuck Montoya's own statements contradict this assertion.

4

"incriminat[e] [Plaintiff] as a participant in the criminal acts committed by the truck's occupants" and "corroborate [Motyka's] testimony that the individual he had fired at had been one of the shooters during the pursuit."[2] (*Id.* at 5.) Likewise, Chuck Montoya gave an eyewitness account of the shooting that was recorded on video. (ECF No. 226, Exhibit D at 8:00–9:35.)

The Montoyas' testimony is highly relevant to the jury's understanding of the events of January 16, 2013 and bears directly on the objective reasonableness of Motyka's actions. However, because Jude and Chuck Montoya are serving sentences of 40 and 80 years' imprisonment, respectively, it is not practical to delay the trial until the Montoyas are released. Thus, the Court finds that Defendants' need for the Montoyas' testimony outweighs "concerns of expense, security, logistics and docket control." *Hawkins*, 1996 WL 335234, at *1; *see also Atkins v. City of N.Y.*, 856 F. Supp. 755, 758 (E.D.N.Y. 1994) (finding balance of equities favored allowing non-party prisoner to testify in civil trial where witness's testimony "would appear to be pivotal to the defense" and "the interests of justice favor extending to a defendant the benefit of the doubt to enable him to rebut effectively the plaintiff's allegations").

Moreover, although Plaintiff states that it is not "unequivocal that the Montoyas cannot exercise their privilege against self-incrimination" (ECF No. 223 at 12), he does not provide specific information suggesting that the Montoyas will, or even can, exercise their Fifth Amendment rights when this case goes to trial in September 2021.[3]

---

[2] Plaintiff has asserted that he "wanted no part of" the car chase and "sought safety from the shooting by crouching down in the pickup bed and then crawling into the cab of the truck to shield himself from the gunfire." (ECF No. 152 at 3.)

[3] The Court notes that Jude Montoya has spoken about the events of January 16, 2013 on other occasions without invoking his Fifth Amendment rights. (*See* ECF No. 210-3.)

5

Defendants represent that Chuck Montoya's direct appeal was rejected by the Colorado Supreme Court on June 3, 2019 and that Jude Montoya's indirect appeal was dismissed on January 30, 2020. (ECF No. 225 at 8 n.6.) Defendants further state that because the Montoyas' time to collaterally attack their convictions has expired, *see* Colo. Rev. Stat. § 16–5–402 (recognizing that an individual has three years to collaterally challenge a class 2 felony), the "Fifth Amendment provides no barrier to their testimony at trial." (ECF No. 225 at 8.)

Furthermore, the possibility that a witness *may* exercise his Fifth Amendment privilege against self-incrimination in response to individual questions does not relieve the witness from testifying altogether at trial. To the contrary, the Tenth Circuit has determined that individuals cannot avoid a summons by "blanket assertions" of the Fifth Amendment and must instead invoke the privilege against self-incrimination "in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability." *United States v. Clark*, 847 F.2d 1467, 1474 (10th Cir. 1988).

Even assuming arguendo that the Montoyas still have the ability to invoke the Fifth Amendment in response to questions surrounding the events of January 16, 2013, many questions that they would be asked at trial may not implicate the Montoyas' Fifth Amendment rights. After all, the Montoyas are not on trial; any testimony regarding their actions during the car chase and subsequent interaction with police on January 16, 2013 can be obtained from other witnesses.[4] As such, the Court cannot conclude that

---

[4] Unless counsel can demonstrate that they have a *significant* interest in obtaining Jude and Chuck Montoya's testimony regarding their own conduct on January 16, 2013, any

6

the Montoyas are not necessary witnesses in light of the possibility that they may attempt to invoke their Fifth Amendment rights against self-incrimination.

Plaintiff understandably raises concerns about prejudice if the Montoyas testify at trial. (ECF No. 223 at 11–12.) However, as set forth in the Court's Order Granting in Part and Denying in Part Both Defendants' Joint Motion *in Limine* and Plaintiff's Motion *in Limine*, the Court has already precluded certain prejudicial evidence relating to the Montoyas, namely: (1) evidence of the prior activity by the red truck occupants of which Motyka was unaware; and (2) evidence regarding the Montoya family after January 16, 2013, including their convictions.[5] (ECF No. 232 at 15–19.) After careful consideration of the topics upon which the Montoyas will be permitted to testify, the Court finds that the need and relevance of the Montoyas' testimony outweighs any prejudice to Plaintiff. Nonetheless, the Court recognizes that the Montoyas' incarceration may still cause *some* prejudice to Plaintiff. The resulting prejudice may be minimized through the manner in which Jude and Chuck Montoya are permitted to testify, as well as an appropriate limiting instruction to be given to the jury during trial.

Accordingly, the parties are directed to confer and file a joint statement **no later than July 26, 2021** indicating whether they believe that the Court should impose any directives in its writs of habeas corpus ad testificandum relating to the manner in which Jude and Chuck Montoya should be permitted to testify (such as testifying in person, attending trial in civilian clothes, etc.). To the extent the parties disagree about whether

---

questions posed to the Montoyas should be limited to their observations regarding Plaintiff's and Motyka's actions.

[5] The Court acknowledges that certain precluded evidence regarding the Montoyas *may* become relevant and admissible as impeachment evidence *if* Plaintiff's witnesses open the door to this evidence. Such issues will be addressed at trial, if necessary.

7

certain directives should be imposed, they should lay out their respective positions in the joint statement. The preparation of the relevant limiting instruction will be deferred until this case is closer to trial.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Writ of Habeas Corpus Ad Testificandum Via Video Conference Or, Alternatively, In Person (ECF No. 210) is GRANTED; and

2. The parties are DIRECTED to file a joint statement indicating whether the parties believe that the Court should impose any directives in the writs of habeas corpus ad testificandum relating to the manner in which Jude and Chuck Montoya should be permitted to testify no later than **July 26, 2021**.

Dated this 31st day of March, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge