**In the United States District Court
for the District of Colorado**

Case No. 15-CV-109-WJM-STV

MICHAEL VALDEZ,

Plaintiff,

v.

ROBERT MOTYKA, Jr., Denver Police Officer in his
individual capacity and CITY AND COUNTY OF
DENVER, a municipality,

Defendants.

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Plaintiff, through undersigned counsel, respectfully submits this Motion for Attorney's Fees and Costs, pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d), and other supporting law. Plaintiff has, pursuant to D.C.Colo.L.Civ.R. 7.1, attempted to confer with Defendants' counsel who oppose the motion. As grounds for his Motion, Plaintiff states as follows:

## **INTRODUCTION**

For six years, Plaintiff's counsel litigated his 42 U.S.C. § 1983 civil rights suit against Defendants. At trial, the jury found that Defendants' liable for the illegal shooting of Mr. Valdez and awarded him nearly $2,531,000 million in damages. *See* [Dkt. 329]. Based on this verdict, Mr. Valdez is the prevailing party and entitled to a fully compensatory award of attorneys' fees and costs. The Court is aware of the facts in this case, having ruled on dozens of evidentiary motions and presided over a nine-day jury trial.

## THE COURSE OF LITIGATION

On, January 15, 2015, Plaintiff filed this 42 U.S.C. § 1983 lawsuit to vindicate his civil rights. [Dkt. 1]. During litigation, Defendants filed: two Partial Motions to Dismiss, [Dkts. 8 and 15], which the late Honorable Richard P. Matsch denied, [Dkts. 12, 22, and 26]. The denial was appealed by the Defendants to the United States Court of Appeals for the 10th Circuit which remanded the case back to the District Court for further proceedings after dismissing certain claims against the defendants.

The case proceeded with hard fought discovery as reflected by the many docket entries. (*See, e.g.*, Dkt. 62, Motion to Compel Responses for Requests for Production of Documents and to Compel Defendants to Answer Deposition Questions). Defendants were insistent about taking the depositions of individuals in custody [Dkts. 49 and 50]. And requested unusual procedures for the depositions of the individual defendants. [Dkt. 51]. Discovery was voluminous: the Defendants produced the equivalent of 11,609 paper pages of discovery and 160 audio/ visual files. Plaintiff produced 2,486 pages of discovery.

After certain discovery was completed and Plaintiff determined that individual Defendants Motz, Roller, and Derrick could be excluded from the potential group of shooters who shot off Mr. Valdez's finger, a motion to dismiss these individuals was filed, as required by Fed. R. Civ. P. 11 [Dkt. 81]. Inexplicably, Defendants resisted the motion to dismiss and instead filed two motions for Summary Judgment [Dkts. 82 and 83]. The Motion to Dismiss was granted, [Dkt. 100], and the Defendants' summary judgment motions were denied as moot. On April 17, 2019, Judge Matsch denied the remaining summary judgment motion as to the Defendants City and County of Denver and Motyka. The summary judgment motion as to Lt. MacDonald was granted. The Defendants then appealed the

denial of the summary judgment to the United States Court of Appeals for the 10th Circuit. This appeal was determined to be frivolous and was ultimately denied. [Dkts. 147 and 162].

Defendant City and County of Denver filed its third (or fourth) motion for summary judgment on May 15, 2020 [Dkt. 181], which was denied on July 13, 2020 [Dkt. 224].

The matter was scheduled for trial on July 13, 2020. The Defendants moved to continue the trial because of COVID-19 concerns and the social attitudes prevailing in the wake of the George Floyd homicide. This motion was granted by the Court resulting in the case, ultimately, being set for trial on September 13, 2021. The case proceeded to a jury trial in this Court and a six-person jury unanimously determined that Defendants violated Mr. Valdez's Constitutional rights by shooting him in the back and improperly training police officers to recognize and manage stress and injury related actions after being shot.

## VERDICT AND DAMAGES

The jury's verdict was an affirmation of Mr. Valdez's case. As reflected in the Jury Verdict Form, [Dkt. 329], the jury awarded Mr. Valdez damages in the total amount of $2,531,000 against the Defendants on both of Mr. Valdez's claims.

## ARGUMENT

In a civil rights action under 42 U.S.C. § 1983, this Court may award the prevailing party attorney's fees. *See* Fed. R. Civ. P. 54(d) (1) and (2) and 42 U.S.C. § 1988(b).[1] The Supreme Court has explained that "[w]here a plaintiff has obtained excellent results, his [or her] attorney should recover a fully compensatory fee," and "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional

---

[1] The attorney fee award includes not only reasonable attorney's fees, but also fees for the services of paralegals and all other items that are normally itemized and billed, if reasonable in amount. *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983).

3

success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Because Plaintiff obtained "excellent results"—winning on every claim presented to the jury and winning substantial damages—and because the requested fees and costs are reasonable, Plaintiff is entitled to an award of attorney's fees as stated below.

### I. Plaintiff's Counsel are Entitled to a Fully Compensatory Fee

Courts in civil rights cases apply lodestar principles to determine the amount of attorney's fees to award a prevailing party. *See, e.g., Case by Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998). Under this analysis, the court determines the number of hours reasonably expended and a reasonable hourly rate, then multiplies the two together to establish the "lodestar." *Id.* The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (emphasis in original); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984).

The following is a summary of the hourly rates hours billed by each attorney and staff member who worked on this case. The reasonableness of these numbers is explained below.

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| Norman R. Mueller- Special Counsel and Appellate Specialist | $ 575 | 2.3 | $0 |
| Ty C. Gee- Shareholder and Appellate Specialist | $ 575 | 7.4 | $0 |
| Jeffrey S. Pagliuca Shareholder | $ 595 | 425.3 | $ 253,053.50 |
| Laura A. Menninger Shareholder | $ 575 | 1,018.20 | $ 585,465 |
| Jamie H. Hubbard Associate | $ 375 | 87.20 | $ 32,700 |
| Alan D. Schindler | $ 375 | 58.70 | $ 22,012.50 |

4

| | | | |
|---|---|---|---|
| Associate | | | |
| David G. Maxted Associate | $ 375 | 705.90 | $ 264,712.50 |
| Jenny Braun Associate | $ 375 | 64.50 | $ 24,187.50 |
| Law Clerk | $ 100 | 21.45 | $ 2, 145 |
| Kelsey Ray Investigator | $ 75 | 67.50 | $ 5, 062.50 |
| Ann Lundberg Senior Paralegal | $ 200 | 287.20 | $ 57,440 |
| Nancy Hickham Senior Paralegal | $ 200 | 113.80 | $ 22,760 |
| Alex Wood Senior Paralegal | $ 200 | 3.8 | $ 760.00 |
| Brenda Rodriguez Paralegal | $ 100 | 218.90 | $ 21,890 |
| Nicole Simmons Paralegal | $ 100 | 19 | $ 1,900 |
| **TOTAL** | n/a | 3101.15 | **$ 1,294,088.50** |

These amounts are supported by the Affidavit of Jeffrey S. Pagliuca, **Exhibit 1**, which includes a detailed record of the billing in the case with specific descriptions and time spent on tasks performed. The reasonableness of these amounts is also supported by the expert report of Ben Lebsack, attached as **Exhibit 2.**

**The total attorney's fee sought in this case** (at this time) **is $ 1,294,088.50.**

**A.  Plaintiff's Counsel's Hours are Reasonable.**

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436). In this case, Plaintiff achieved success on all issues submitted to the jury. Considering Plaintiff's indisputable success in this case, as well as all other relevant considerations, the number of hours billed, and the hourly rates charged are reasonable.

The Tenth Circuit has compiled a list of factors to be considered when evaluating the reasonableness of a prevailing party's attorney's hours submitted in a fee petition: (1)

5

whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers. *Ramos*, 713 F.2d at 554.

### 1.  Plaintiff's counsel appropriately exercised billing judgment.

"The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Id.* at 553. To that end:

> [c]ompiling raw totals of hours spent…does not complete the inquiry. It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority.

*Id.* (citation omitted). "The prevailing party must make a 'good-faith effort to exclude from a fee request hours that are excessive, redundant, and otherwise unnecessary.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434).

Counsel have diligently exercised billing judgment. *See* **Ex. 1**, *Pagliuca Affidavit*, ¶¶ 67-68. Plaintiff's counsel have worked on both hourly and contingent fee bases. They are accustomed to making determinations as to which tasks, especially tasks performed by associate attorneys and paralegals, are appropriate to bill to clients. Counsel have reviewed and modified where appropriate the time entries for every timekeeper in the case. Duplicative time entries have been removed, and work determined to be performed inefficiently or unnecessarily has been reduced or eliminated. *Id.*

When counsel felt that unreasonable amounts of time were expended on any given task, the amounts billed were reduced. Plaintiff's counsel has not sought compensation for many hours of legal work performed by associates who lacked experience to work

6

efficiently. For example, Haddon Morgan and Foreman, P.C. has employees who specialize in appellate work, in this case, Norman Mueller and Ty Gee. Mr. Mueller and Mr. Gee consulted with various associates in connection with the three appeals filed by Defendants. Much of the consultation time was not billed and is not being requested as part of this fee application. The billing does not include all the time undersigned counsel and staff spent on intra-office conferences about the litigation, nor the bulk of the time undersigned counsel spent writing and reviewing emails among staff and with opposing counsel.

This matter was litigated as cost-effectively as possible. Projects were assigned to maximize efficiency while ensuring high levels of competence. Matters were delegated to lower-rate billing personnel wherever possible and appropriate. Generally, only one attorney at a time prepared for depositions. Legal issues were divided with the same goal in mind.

### 2. The number of hours spent on each task was reasonable.

"[W]hen examining an attorney's fee claim, the district court should examine the hours spent on each task to determine the reasonableness of the hours reported. The district court, however, does not have to justify every hour allowed in awarding attorney's fees under federal statutes." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (citation omitted). Similarly, this Court need not "announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986).

While counsel should work efficiently, "a diligent attorney, even one with over 30 years of practice experience, should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time." *Casey v. Williams Prod. RMT Co.*, 599 F. Supp. 2d 1253, 1256 (D. Colo. 2009); *see also Homans v. City of Albuquerque*, 264 F. Supp. 2d 972,

7

979 (D. N.M. 2003) ("[I]t is not unreasonable for attorneys to bill some amount of time to legal research on specific issues unique to a particular motion. Indeed, such a task is integral to the briefing process.").

Counsel were reasonable in spending time drafting responses to dispositive motions and other motions that would significantly affect the evidence and arguments presented at trial. Given the hotly disputed tenor of litigation and Defendants' vigorous defense of the case since the outset, Plaintiff's counsel was reasonable in spending sufficient time on each important proceeding in the case such that counsel could adequately argue and support their arguments. Nevertheless, due to Plaintiff's firm's subject-matter expertise in federal civil litigation considerable benefit and efficiencies were achieved using the law firm's preexisting resource files, which provided research and templates for use in this case that did not need to be built from scratch. See **Ex. 1**, *Pagliuca Affidavit*, ¶ 55.

### 3. The importance of this case required many hours of work.

"Particularly in civil rights cases such as this, 'the district court should focus on the significance of the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation.'" *Joseph A. by Wolfe v. New Mexico Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (quoting *Hensley*, 461 U.S. at 435). After all, "[u]nlike most private tort litigants, a civil rights Plaintiff seeks to vindicate important civil…rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Indeed, "[p]otential liability for full fee awards can deter violations of the civil rights laws, especially in situations where the fee award represents a significant portion of a defendant's financial exposure." *Ramos*, 713 F.2d at 552. Given the importance of the rights vindicated, the overall public interest served by Plaintiff's victory, and the numerous hurdles Plaintiff's

counsel faced obtaining such a victory (including numerous discovery disputes and multiple dispositive motions), Plaintiff's counsel's hours are reasonable.

### 4. Defendants' vigorous litigation required Plaintiff's counsel to expend a significant number of hours on this case.

"[O]ne of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is the responses necessitated by the maneuvering of the other side," and "[t]he Supreme Court has…recognized that part of an attorney's calculus of the amount of time reasonably necessary for a case is the vigor which the opponents bring to the dispute." *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998). This case began over six years ago and culminated in a nine-day jury trial. During litigation, the parties took over a dozen depositions, and Defendants filed two 12(b) motions to dismiss, three motions for summary judgment, three appeals, motions to strike, motions to bifurcate, motions to continue, and other contested motions. *See Villescas v. Richardson*, 145 F. Supp. 2d 1228, 1232 (D. Colo. 2001), *reversed on other grounds* 311 F.3d 1253 (10th Cir. 2002) (length of litigation and dispositive motions relevant to determining reasonableness).

Defendants continued vigorously litigating and insisting on proceeding to trial. When a "defendant's own unwillingness to resolve [a] matter short of a full-blown jury trial play[s] a not-insubstantial part in contributing to the number of hours required to litigate the case," especially after a plaintiff's claims survive summary judgment, courts have been skeptical of requests to reduce a fee award. *Garcia v. Midland Credit Mgmt.*, 2015 U.S. Dist. LEXIS 108783, at *3 (D. Colo. Aug. 18, 2015).

Where, as here, defendants engage in hard-fought litigation, Plaintiff's attorneys are reasonable in expending significant hours litigating:

> [H]ere the effort expended by the defendants suggests at least that they viewed the case as sufficiently complex and serious to warrant the expenditure of large

> amounts of attorney time, and it highlights the tooth-and-nail litigating approach [Defendant] used in this case. In light of this tenacious effort by [Defendant] and its lawyers, the amount of attorney time expended by the Plaintiffs begins to look more reasonable, not less.

*Id.* A party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiffs in response." *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980). A "client cannot escape the consequences of tactics that undeniably drive up the costs of litigation, even if such tactics amount to no more than aggressive advocacy." *Latham v. First Marine Ins. Co.*, 16 F. App'x 834, 839 (10th Cir. 2001).

### 5. Plaintiff's counsel diligently minimized attorney time spent.

"Another factor the court should examine in determining the reasonableness of hours expended is the potential for duplication of services. 'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.'" *Ramos*, 713 F.2d at 554 (quoting *Copeland*, 641 F.2d at 891).

1,657.65 of the total hours billed were billed by associates and support staff, whose hourly rates are much lower than those of Ms. Menninger and Mr. Pagliuca. *See Gol TV, Inc. v. EchoStar Satellite Corp.*, No. 08-cv-02143-PAB-MJW, 2011 U.S. Dist. LEXIS 103705, at *7-8 (D. Colo. 2011) (analyzing hours billed by partners and associates and concluding that counsel did not engage in "top-heavy billing"). Most of the heavy pretrial lifting was done by associates and paralegals. Plaintiff's counsel took advantage of all available opportunities to reduce the number of attorney hours spent, and the hours submitted are therefore reasonable.

## B. Plaintiff's counsel's rates are reasonable.

Plaintiff's counsel's hourly rates, which are in line with both the hourly rates they charge and are paid by clients and the local market, are reasonable. "The first step in

10

setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F.2d at 555; *accord Jane L.*, 61 F.3d at 1510 ("Hourly rates must reflect the 'prevailing market rates in the relevant community'" (quoting *Blum*, 465 U.S. at 895). Furthermore, "[t]he 'local market rate' is usually the state or city in which counsel practices." *Ctr. For Biological Diversity v. U.S. Fish & Wildlife*, 703 F. Supp. 2d 1243, 1249 (D. Colo. 2010) (citation omitted). Thus, "[t]he hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation," *Ramos*, 713 F.2d at 555.

### 1. Plaintiff is entitled to fees at counsels' current hourly rates.

The Supreme Court has held that the lodestar should be calculated based on the attorneys' current rates. In *Missouri v. Jenkins*, a case that, like this case, lasted years, the Court explained:

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. [T]herefore, … an appropriate adjustment for delay in payment…by the application of current rather than historic hourly rates…is within the contemplation of the [fee-shifting] statute.

491 U.S. 274, 283-84 (1989). The Tenth Circuit has reached the same conclusion. *See Ramos*, 713 F.2d at 555.[2]

For the year 2021, HMF shareholder Jeffrey S. Pagliuca' s hourly rate is $595, and Laura Menninger's hourly rate is $575. The HMF 2021 associate rate hourly rate is $375.

---

[2] District courts in the Tenth Circuit have applied this rule nearly uniformly, particularly in litigation vindicating civil rights. *See e.g.*, *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1283 (D. Wyo. 2004); *Zamora v. City of Belen*, No. CIV 03-743 JB/RLP, 2006 U.S. Dist. LEXIS 28778, at *22 (D.N.M. Mar. 31, 2006); *Kelley v. City of Albuquerque*, No. CIV 03-507 JB/ACT, 2005 U.S. Dist. LEXIS 39001, at *24 (D.N.M. Oct. 24, 2005).

The senior Paralegal hourly rate is $200, and the Paralegal hourly rate is $100. Kelsey Ray, an investigator employed by HMF was paid $75 for her work. The law clerk rate at HMF is $100. The updated hourly rates are the standard rates charged and paid for work performed by these individuals when any client retains HMF on an hourly basis. The Tenth Circuit has affirmed a fee award where "the hourly rates requested and awarded to some of plaintiffs' attorneys represent[ed] the actual current billing rates for the...attorneys who represented them." *Reazin v. Blue Cross & Blue Shield, Inc.*, 899 F.2d 951, 983 (10th Cir. 1990).

### 2. The skill and experience of counsel along with the current market rate in Denver, justify the requested rates.

The hourly rates charged by each of the lawyers in this case are reasonable, based on each lawyer's skill, experience, reputation in the community, and accomplishments. The legal experience and accomplishments of each of Plaintiff's lawyers in this case are set forth in detail in the attached Affidavit of Mr. Pagliuca. **Ex. 1**, *Pagliuca Affidavit*, at ¶¶ 49-50.

Hourly billing rates of $575-$595 for experienced civil litigation partners, who have impressive backgrounds and extensive experience handling major civil litigation, are reasonable given the prevailing rates in the Denver market. *Id.* Such hourly rates have been determined reasonable by federal and state courts in Colorado. For example, in *Martinez v. Valdez*, No. 11-cv-00102-MSK-KLM, 2015 U.S. Dist. LEXIS 114602 (D. Colo. 2015), federal Judge Marcia Krieger awarded attorney fees based upon similar rates of the KILLMER, LANE & NEWMAN LLC partners Darold Killmer, Mari Newman and David Lane; at the time (2015), the rate of Darold Killmer and David Lane was $500. Likewise, similar hourly rates of the same partners were used as the basis for the award of attorney fees to the prevailing

12

plaintiff in the Section 1983 cases of *Duran v. Koehler*, No. 10-cv-01569-REB-KMT, 2014 U.S. Dist. LEXIS 117851 (D. Colo. 2014).[3]

Plaintiff's counsel's fees are consistent with rates in the Denver marketplace. Denver attorney Lynn Feiger was awarded $500 per hour *fifteen years ago* in 2006 in a case known as the *Denver Mint Class Action*. Six years ago, in the 2015 case of *Krantz v. Dulacki*, Denver District Court Judge Catherine Lemon found that the following hourly rates were reasonable: $450 per hour for attorney Quasir Mohammedbhai (a partner with, then, 12 years' experience); $425 per hour for Siddhartha Rathod (a partner with, at the time, 8 years' experience); $375 per hour for Arash Jahanian (an associate at the time with 7 years' experience); $325 for Matthew Cron (an associate with, then, 5 years' experience); and $125 per hour for paralegal work. In late 2018, Judge Daniel approved Mr. Lane and Mr. Killmer at $590 per hour, Ms. Newman at $540 per hour, Ms. Orshan at $350 per hour, paralegal work at $175 per hour, and legal assistant work at $120 per hour. *See Stroup and Lee v. United Airlines*, Case no. 15-cv-01389-DDD-STV (D. Colo. Dec. 5, 2018), [Dkt. 232]. More recently, Judge Christine Arguello approved Mr. Lane and Mr. Killmer at the current hourly rate of $650, Ms. Newman at her hourly rate of $600, and associate Andy McNulty at $375 per hour. *See* **Exhibit 5**, Order Directing Entry of Final Judgment and Stipulated

---

[3] Plaintiff's rates are especially reasonable when viewing them in light of the Laffey Matrix and the USAO Attorney's Fees Matrix.  The Laffey Matrix is a matrix of hourly rates for attorney of varying experience levels and paralegals/law clerks that is prepared annually.  The applicable fee schedule for 2021 places a reasonable rate of $919 per hour for Mr. Pagliuca and Ms. Menninger and reasonable associate rates between $ 381 and $764 depending on years post law school. The applicable paralegal/law clerk  rate for 2021 is $208 per hour. The USAO Attorney's Fee Matrix is prepared by the Civil Division of the United State Attorney's Office for the District of Columbia and is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) (aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984)); *see also Anderson v. Nat'l Credit Sys.*, 2010 U.S. Dist. LEXIS 134268, *8 (D. Colo. Dec. 1, 2010) (partially relying on the Laffey Matrix in finding that the plaintiff's proposed rates were reasonable). The applicable USAO 2020-2021 hourly rates are:  Mr. Pagliuca $665; Ms. Menninger $621; associate rates between $353 and $510, and paralegals and law clerks $180. *See* Exhibits 3 and 4.

Motion for Entry of Order Regarding Attorney's Fees and Costs. *Willmeng v. City of Lafayette*, 19-cv-00150-CMA-SKC.

Finally, "[e]xperience measured by years of practice is not the only indicator of value. The quality of one's work and its contribution to the result obtained obviously must be considered." *Ryals*, 2014 U.S. Dist. LEXIS 77304, at *30 (citing *Ramos*, 713 F.2d at 555). Plaintiff's counsel's work in this case was of high quality.

## II. The Court Should Also Award Costs

Mr. Valdez is responsible for the costs associated with this litigation. HMF will submit a bill of costs to the Clerk of the United States District Court pursuant to 28 U.S.C. § 1920. The total amount of taxable costs under the statute are $36,217.78. *See*, **Dkt. 341**, Bill of Costs. Costs not included as part of the taxable costs are $36,399.19, *See*, **Exhibit 6**, Expenses/ Advances not included in Bill of Costs.

## Certification of Counsel

Undersigned counsel hereby certifies that the billing rates and expenses reflected in this motion and the attached affidavit are the normal fees and costs billed by counsel and paid by clients where an hourly fee is charged to the client[4]. Undersigned counsel further certifies that the costs and expenses reflected in this motion are the costs and expenses normally charged to clients of the below signed law firm, and that this practice is normal within the Denver legal community. The referenced costs and expenses are the obligation of Plaintiff in this case.

---

4 The rates are those charged to private pay clients. HMF also represents a limited number of clients at lesser rates. Lawyers at HMF are active in *pro bono* work and are often appointed to represent indigent defendants in criminal cases and are paid the current rate deemed appropriate by the appointing court. Mr. Pagliuca is outside counsel for the Office of the Colorado State Public Defender at a lesser rate than that charged to privately retained clients.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests that this Court grant this Motion and enter an award attorney's fees in the amount of $1,294,088.50, plus $36,399.19 in costs jointly and severally against the Defendants.

Respectfully submitted this 17th day of November 2021.

s/ *Jeffrey S. Pagliuca*
Laura A. Menninger
Jeffrey S. Pagliuca
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:303.831.7364
Fax: 303.832.2628
Email: LMenninger@hmflaw.com;
JPagliuca@hmflaw.com

*Attorneys for Michael Valdez*

**Certificate of Service**

I hereby certify that on November 17, 2021, I electronically filed the foregoing *Plaintiff's Motion for Attorney's Fees and Costs* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Wendy J. Shea
Jennifer Johnson
Geoffrey Klingsporn
Denver City Attorney's Office
Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202

s/ Nicole Simmons