**In the United States District Court
for the District of Colorado**

Case No. 15-CV-109-WJM-STV

MICHAEL VALDEZ,

Plaintiff,

v.

ROBERT MOTYKA, Jr., Denver Police Officer in his
individual capacity and CITY AND COUNTY OF
DENVER, a municipality,

Defendants.

---

## PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION
## FOR ATTORNEY'S FEES AND COSTS

---

Plaintiff Michael Valdez, through counsel, respectfully submits this Reply in Support of his Motion for Attorney's Fees and Costs. (Dkt. 358)

### I. "Excellent" Trial Results Justify Fully Compensatory Fee Award.

Defendants seize upon the claims dismissed under Rule 12(b)(6) early in the case to justify a fee award reduction of 25%, asserting Mr. Valdez achieved only "mixed results" and it is "impossible" to identify the work spent on these dismissed claims. (Resp. 2-4 & Ex. 2). Defendants are incorrect both as a matter of law and fact.

#### A.  Complete Victory Including *Monell* Success Unparalleled in this District

As *Hensley* held, and the Tenth Circuit repeatedly re-affirmed, a fee award for "excellent results" "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a

sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435.[1]
The Tenth Circuit specifically rejected Defendants' approach in Table 1 – a barebones comparison of successful claims versus those initially pled. In *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995), the Tenth Circuit reversed a district court who simply listed out successful and unsuccessful claims and remanded for the court to "make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying fully recovery, or to what extent plaintiff's 'limited success' should effect a reduction in the lodestar." *Id.* at 1511.

Here, by every measure and any standard, Mr. Valdez obtained "excellent results." At trial, he succeeded on each claim against each defendant. He was awarded 100% of his claimed economic damages in the amount of $131,000 and an additional $2.4 million for his pain and suffering. Counsel has been unable to identify *any* case in this district over the last 25 years in which a jury issued an award in the millions of dollars for injuries short of death.[2]

Significantly, this is the first plaintiff jury verdict on a *Monell* claim against the City and County of Denver in nearly three decades, and one of the largest failure to train plaintiff verdict awarded in this district. Dkt. 195 at 20 (citing last known failure to train verdict against Denver in 1993). Here, Mr. Valdez held Denver accountable for its failure to train on

---

[1] *See also Ramos v. Lamm*, 713 F.2d 546, 556 (10th Cir. 1983) ("If the plaintiff has obtained 'excellent results,' the attorney's fees should encompass all hours reasonably expended; no reduction should be made because the plaintiff failed to prevail on every contention."); *Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 412-13 (10th Cir. 1993) (trial court abused discretion by fees reduction for plaintiff who prevailed under Equal Pay Act but failed on Title VII and state law claims finding "there was one bundle of proof presented on the three issues. There was no way to separate the work on the core issue."); *Durant v. Independent Sch. Dist. No. 16*, 990 F.2d 560, 566 (10th Cir. 1993) (prevailing party status on the First Amendment claim subsumes failure to succeed on due process claim).

[2] *Compare Martinez v. Valdez*, 125 F.Supp.3d 1190 (D. Colo. 2015) (defense verdict on majority of constitutional claims; fee reduced by 10%); *Milham v. Perez,* 03-cv-702-JSK-MJW, 2005 WL 1925770 (D. Colo. 2005) (<u>at trial</u> one claim withdrawn, one dismissed, one rejected by jury; excessive force award $10,000; fee reduced by 50%); *Waller v. Lovingier*, No. 14-cv-2109-WYD-NYW, 2017 WL 11545516 (D. Colo. 2017) (plaintiff claimed $2.5 million in compensatory damages for excessive force, awarded $50,000).

two theories. This is a win not just for Mr. Valdez but also for the community; hopefully a jury verdict of such a size might provide the catalyst for Denver to improve its trainings.[3]

### B. No Reduction Warranted for *De Minimis* Time on Dismissed Claims

In any event, counsel spent *de minimis* hours on the dismissed claims. First, the claims were dismissed under Rule 12(b)(6) prior to any discovery, not at trial or summary judgment. The only time devoted to those claims was (a) drafting the Amended Complaint, where the facts were the same for all claims (Dkt.11), (b) defending against the Motion to Dismiss, and (c) filing an Answer Brief before the Tenth Circuit. Defendants' appeal of Motion to Dismiss Order lasted from February 12, 2016 until the March 3, 2017; proceedings in the district court were stayed. During that entire 13-month period, counsel billed as follows: Pagliuca: 1.9 hours; Menninger: 2.0 hours (1.3 calls with 10th Circuit mediator and 0.5 review of Defendants' brief); Hubbard 19.2 hours (drafting, editing and filing Answer brief). Counsel expended 24 hours on the appeal of the dismissed claims, all of which is easy to ascertain from the bills. Yet, Defendants argue that the entire fee award of 3,000-plus hours should be cut by 25%. (Resp. at 10) Their argument is frivolous. The claims were dismissed in early 2017; the following 4 ½ years had nothing to do with the dismissed claims and only to do with successful ones.

With respect to the dismissed defendants, each of those individual officers was a percipient witness to the events leading up to and just after Mr. Valdez was shot in the back. Each fired weapons at the scene. Each was deposed about their observations and participation in the use of force at the scene. As eye-witnesses, the same discovery was

---

[3] Such is the importance of *Monell* claims that certain district judges in this district have either refused to reduce awards or have minimally reduced them when a plaintiff was successful in its suit against an individual officer but unsuccessful on the *Monell* claim. *See Martinez,* 125 F.Supp.3d at 1215-16 (reducing fees by only 5% for summary judgment on *Monell* claim); *Duran v. Koehler*, 10-cv-1569-REB-KMT, 2014 WL 419578, *2 (D. Colo. 2014).

necessary from each officer irrespective of whether he also was a defendant. Three of the four (Motz, Roller and Macdonald) testified at trial to those events; Defendants either cross-designated or designated them. Dkt. 268.[4] Judge Matsch refused to award Defendants attorneys' fees for defending claims against those individual officers, because he held discovery from them was necessary to determine who was responsible for the injury to Mr. Valdez's finger and that their dismissal prior to trial was Plaintiff's strategic choice to streamline the jury trial. Dkt. 100 at 2. Thus, although these individual officers were dismissed prior to trial,[5] the facts gleaned from them was necessary to establish Mr. Valdez's claims at trial, and the claims against them were based on a "common core of facts" such that a reduction of fees is not justified.

## II. Plaintiff's counsel's fees are imminently reasonable and well-documented.

### A. Defense grossly overstates amount of block billing and fails to understand what constitutes an "improper block bill."

The defense grossly overstates purported block-billing and requests a 15% reduction of the overall number of hours. The law and billing records belie their claims.

Notably, the Tenth Circuit does not prohibit block billing *per se. See BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F.App'x 818, 835 (10th Cir. 2012). Only if block billing makes it difficult, or impossible, for a court to determine the amount of time spent on specific tasks, may a general reduction be warranted. *Robinson v. City of Edmond*,

---

[4] The fourth, Peter Derrick, was listed by Defendants as a "may call" but was not called to testify at trial. Dkt. 271.

[5] Mr. Valdez voluntarily dismissed the claims against Roller, Motz and Derrick. As to Macdonald, Judge Matsch granted summary judgment in his favor based on qualified immunity. Dkt. 124 at 7-8. Mr. Valdez is appealing that ruling, but the analysis remains the same: the discovery and pursuit of claims against Macdonald was the same regardless of whether he was a mere witness or defendant in the case, and his testimony was necessary to prove Mr. Valdez's successful claims.

4

160 F.3d 1275, 1284–85 (10th Cir. 1998).[6]

Jeffrey Pagliuca:  Defendants concede that Mr. Pagliuca provided single-entry descriptions, or, if multiple tasks, he specified the amount of time on each task. Their only quibble is an unfounded and unsupported supposition that his large blocks "likely conceal breaks, interruptions, and other inefficiencies." Their three "examples" of such include work on a summary judgment response, research on municipal liability and review of a motion to dismiss. Each task is easily identified as work germane to the prosecution of Mr. Valdez's claims. No reduction is justified for "block-billing".

Laura Menninger:  Defendants contend that Ms. Menninger's bills "regularly combined multiple tasks in a single entry."  They point to two examples. In fact, the vast majority of Ms. Menninger's entries are either single-task entries or entries for short lengths of time consisting of a few related tasks. Some examples of the latter include:

- 8/23/21 – 1.7 hours – "Draft witness summaries; office conferral with paralegal regarding witness folders; email opposing counsel; receive email from Denver regarding witness availability."

- 9/2/21 - 0.3 hours – "Review court's opinion, review and respond to eight emails from City attorneys on various pretrial issues; prepare witness lists, order, assignment; work on subpoenas for trial; draft cross examination."

*Roane v. Frankie's Bar & Grill*, No. 16-CV-02936-CMA-NYW, 2018 WL 4076287, at *5 (D. Colo. Aug. 27, 2018) (not "improper block billing" for entries of "short lengths of time, consisting of two to four related tasks"); *see also Baruth v. Stellar Recovery, Inc.,* No. 16-

---

[6] *See also Renasant Bank v. Northpointe Bank,* No. 1:18-CV-00950-RM-NYW, 2019 WL 5863898, at *1 (D. Colo. Nov. 8, 2019) ("'[B]lock billing' presents a problem only when some of the tasks in a billing entry are compensable and others are not."); *Stroup v. United Airlines, Inc.,* No. 15-CV-01389-WYD-STV, 2018 WL 10613861, at *5 (D. Colo. Dec. 5, 2018) ("given my broad discretion to determine whether the block billing was unreasonable, I conclude that any block billing on Plaintiffs' billing sheets did not prevent me from determining the reasonableness of the hours expended. Except as noted above, I find the number of hours billed to be reasonable given the complex and contested nature of this case."). *Aptive Env't, LLC v. Town of Castle Rock, Colorado,* No. 17-CV-01545-MSK-MJW, 2018 WL 10231677, at *3 (D. Colo. Oct. 22, 2018) ("The determination of whether a billing entry, block-billed or otherwise, is excessive is always left to the discretion of the trial court, based on its familiarity with the issues in the litigation.").

CV-00797-PAB-KLM, 2018 WL 2316639, at *3 (D. Colo. Mar. 19, 2018) ("instances where defendant 'places multiple items in one time entry' are of the same type, namely, entries that list a single task that happens to have multiple parts or include review of multiple documents").

Moreover, outside of actual depositions or trial days, there are only a handful of entries for Ms. Menninger that exceed 5 hours, almost of all of which involved preparing for depositions (and specifying which one), drafting a section of a brief (and specifying which one), or preparing for trial (and specifying the trial prep activities). *Roane,* 2018 WL 4076287 at *5 ("larger entries" not "improper block billing" if descriptions "do not preclude the Court from assessing the reasonableness of time spent on specific tasks").

Associates: As with the partners' records, the associates who worked on the case largely billed either single-task entries or larger blocks of related tasks. Ms. Hubbard's are a good example. Defendants complain that "[**a**]ll her entries are block-billed; **none** contain detail specific enough to distinguish work done on successful claims from work done on unsuccessful claims." Resp. at 6-7 (emphasis added). It is hard to imagine that Defendants reviewed Ms. Hubbard's bills before making these claims. Almost all of Ms. Hubbard's entries are single-task, for small amounts of time, and clearly delineate what she was working on. Mr. Schindler has only a couple of large entries and they reflect travel to and from Arkansas Valley to visit Mr. Valdez in custody there, and a trip to Limon Correctional Facility for Jude Montoya's deposition.

Mr. Maxted had several larger entries, but as Judge Arguello noted in *Roane,* where the court "can easily determine the amount of time Plaintiff's attorney spent on specific tasks and evaluate his billing judgment," a reduction not warranted. *Id.* Mr. Maxted's entries reflect the numerous tasks he accomplished a block of time; his entries are not general descriptions like "review file." As Defendants well know, much of the discovery in this case

6

was produced as video tape interviews of the many officers, EMT's, and civilians who were percipient witnesses to the Montoya car chase or the events in the park. These video interviews were not transcribed. Mr. Maxted undertook the time consuming task of documenting **208 videos and video interviews**, to complete discovery. His records reflect the amount of time he spent on tasks. No reduction is warranted.

Defendants most likely copied from a stock brief on "block billing" and did not actually review counsel's bills in Exhibit 1 to Dkt. 358. Grouping related tasks together and giving complete descriptions for all entries does not transform the bills into "improper block bills" of the type sometimes disallowed in this Circuit. The Court should deny any reduction.

    **B.  Counsel exercised extensive billing judgment**

Defendants make another false claim that "[m]ultiple timekeepers billed for meetings, emails or telephone calls with each other 48 times," justifying in their view a 10% overall reduction in fees. (Resp. at 11, 13)

First, "it may be appropriate for both counsel to bill time for occasional strategy planning sessions, where both are bringing value to the discussion." *Arend v. Paez*, No. 12-CV-01270-DDD-SKC, 2019 WL 2726231, at *4 (D. Colo. July 1, 2019). As reflected in the attached Exhibit 7-A, plaintiff's counsel either did not bill for the "multiple timekeepers" at joint meetings or the meetings reflected an "occasional strategy planning" or other similarly necessary session. In <u>20</u> of the <u>48</u> instances, one or the other lawyer or timekeeper did not bill for the meeting or email. That leaves <u>28 instances</u> of joint meeting or email billing over a 6 ½ year (78 month) representation that resulted in a 9 day jury trial, or approximately one meeting every three months.

Among those 28 joint meeting sessions in which multiple timekeepers billed were 5 meetings <u>with the client</u>, at the outset of the case and preparing him for trial; several instances where different lawyers were drafting different parts of the brief and needed to

7

coordinate; several instances of coordination between Ms. Menninger and Mr. Maxted who were taking different depositions (rather than having the other bill to read the entire deposition); two meetings between Ms. Menninger and the paralegal to finalize the witness and exhibit lists; and a grand total of <u>one</u> trial preparation and strategy meeting for the counsel and the paralegals working to prepare for the trial.

Defendants' other complaints also are frivolous. On <u>2</u> occasions, a more senior lawyer who was giving direction billed for a meeting rather than the lower-billing associate, because the senior lawyer's experience contributed the most work product. On six occasions, multiple lawyers attended court conferences. Defendants brought 2-3 lawyers themselves to <u>every</u> court conference. Different HMF lawyers worked on different aspects of the case and were necessary to answer any questions from the Court as they arose. Six such appearances over a 6 ½ year litigation demonstrates the thinness of Defendants' complaint.

To be sure, there are a few billing errors that counsel for Mr. Valdez concedes should be removed from his fee application. Defense counsel did not confer with us before raising them or we would have agreed to remove them.[7] Yet, at most, these billing errors amount to an easily-ascertained amount of $11,594, which can be removed from the application. The errors do not justify the requested 10% overall reduction ($129,408.80), which would amount to a windfall to Defendants of $117,814.80 in properly billed amounts.

---

[7] Defendants correctly point out that two entries that were from a different matter, totaling $<u>2,875</u>. (Resp. at 11 noting Menninger 9/7/2021 and two entries on 10/4/2021). Likewise, there were a few duplicate bills as noted in Resp. n. 4, totaling $<u>8,194</u>.

Defendants are incorrect that "work re DMV situation" was unrelated to this case. Mr. Valdez was the victim of identity theft and needed help clearing an OJW (warrant) that was incorrectly in his name to obtain his driver's license to get certain records (as ID) for this case and to travel to meet with counsel in this case, rather than counsel traveling to him. Mr. Maxted drafted a motion to accomplish this task for a total of 1.4 hours. If the Court is inclined to remove that amount, despite its relation to prosecuting this case, the total amount is $<u>525</u>.

Regarding mediation, Defendants acknowledge that fees incurred in the course of mediation may be recovered, but deny that in this case the mediation was necessary for the final result. Indeed, it was Defendants who proposed that the parties mediate the case shortly before trial and Plaintiff expended significant time preparing for it. Mr. Valdez agreed to accept a settlement that was approximately ¼ of what he ultimately recovered at trial, but Defendants claimed not to have authority to go above a tiny settlement amount. The entire process was frustrated by Defendants' failure to negotiate in good-faith. Following the unsuccessful litigation, Plaintiff began preparing for the fall 2021 trail, an entire trial which could have been avoided. Under the circumstances, denial of mediation time would disincentivize future Section 1983 litigants from spending time preparing for and participating in settlement discussions because their fees from it will never be recoverable. *See Bell v. Turner Recreation Com'n*, 2010 WL 126189 at *5 (D. Kan. Jan. 8, 2010).

Regarding travel, nothing mandates a reduction of travel time to ½ of the attorney's rate. *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990). The inquiry is the "customary practice" in the locale and the Court's "own knowledge". As this Court is aware, in this District, under the Criminal Justice Act travel fees are incurred at their full rate, including to and from the courthouse. Plaintiff's counsel in this case bills their regular rate to hourly clients at their full rate. Apart from trips to the courthouse, the only other significant travel here was to and from Arkansas Valley to meet with Mr. Valdez while he was in custody and to prepare him for (and attend) his deposition, and for Mr. Schindler to appear at Jude Montoya's deposition in Limon.

Finally, as to the timekeepers' qualifications, although counsel does not believe it necessary as to every staff person, included in Exhibit 7 is an affidavit documenting the qualifications of paralegals (Hickham, Rodriguez, and Wood), associate Jenny Braun and investigator Kelsey Ray. Their fees should be recoverable.

### III. Plaintiff's counsel's rates are imminently reasonable.

In response to the substantial justification offered by Mr. Valdez for his counsel's rates, and the affidavits of Mr. Pagliuca and expert opinion of Ben Lebsack (Dkt. 358-2), Defendants offer mere unsupported argument that the attorney rates are too high. They fail to address the high qualifications and experience of partners Mr. Pagliuca and Ms. Menninger, and simply contend that Ms. Hubbard had previously "only" been a clerk and Mr. Maxted a public defender prior to their employment at HMF.

This Court should reject Defendants' unsupported complaints. Ms. Hubbard clerked for 11 years prior to her HMF employment, including 8 years in federal courts. Her extensive knowledge of 42 U.S. C. § 1983 litigation supports a rate of $375. Likewise, although Mr. Maxted had not practiced civil litigation before HMF, he had worked 9 years trying cases that were of very similar factual scenarios in his role as a public defender in the District of Columbia. His expertise in reading police and witness reports and the types of expert testimony in criminal cases provided a number of advantages in particular case given the nature of the evidence.

Finally, Defendants offer no justification for why Mr. Pagliuca should be billed at $100 / hour less than Mr. Lane has been approved, or Ms. Menninger less than Ms. Newman, both of whom have comparable years of experience.

### IV. Costs are compensable

In a § 1983 action, cost items such as photocopying, mileage, meals and postage "should be allowed as fees only if such expenses are usually charged separately in the area." *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983). Mr. Lebsack opined that the "costs were reasonable" in his expert opinion. *See* Dkt. 358-2 at page 13. Mr. Pagliuca explained that Mr. Valdez is responsible for the reasonable costs expended by HMF. *See* Dkt. 358-1 at ¶ 69. In the absence of any rebuttal opinion or evidence, the reasonable costs

requested should be ordered as a part of the fees in this case.

**CONCLUSION**

WHEREFORE, for the reasons set forth above, Mr. Valdez respectfully requests that the Court enter an Order awarding him the fees and costs he requested in his Motion, less the amount of $11,069 detailed above in footnote 6 that were erroneously billed, for a total of $**1,283,019.50**.

Dated: February 4, 2022.

Respectfully submitted,

s/ *Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca
Laura A. Menninger
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:303.831.7364
Fax: 303.832.2628
Email: LMenninger@hmflaw.com;
JPagliuca@hmflaw.com

*Attorneys for Michael Valdez*

**Certificate of Service**

       I hereby certify that on February 4, 2022, I electronically filed the *Plaintiff's Reply In Support of His Motion for Attorney's Fees and Costs* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Wendy J. Shea
Jennifer Johnson
Geoffrey Klingsporn
Denver City Attorney's Office
Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202


Michael Valdez
Via U.S. Mail

                                                *s/ Nicole Simmons*